## STATE OF MARYLAND *v.* ERIC LASSOTOVITCH
### ET AL.
[Nos. 16-19, January Term, 1932.]

*Decided March 4th, 1932.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Wm. L. Henderson, Assistant Attorney General,* and *William H. Maynard, Assistant State's Attorney for Baltimore City,* with whom were *Wm. Preston Lane, Attorney General, Herbert R. O'Conor, State's Attorney,* and *Albert H. Blum, Assistant State's Attorney,* on the brief, for the State.

*Charles E. Moylan,* with whom was *Theodore R. McKeldin* on the brief, for Basil B. Wells, appellee.

*Charles McH. Howard,* with whom were *Venable, Baetjer & Howard,* on the brief, for the Whiting-Turner Construction Company, appellee.

*Harry E. Karr,* with whom was *Edwin J. Colgan, Jr.,* on the brief, for the Mullan Contracting Company, appellee.

DIGGES, J., delivered the opinion of the Court.

Nos. 16, 17, 18 and 19 of this term present the same question for determination by this court, and were argued together. They are appeals by the State of Maryland from orders of the Criminal Court of Baltimore City sustaining demurrers interposed by the respective accused to the indictments and each and every count thereof. We will only discuss the indictment in No. 16, as each will be controlled by and must stand or fall upon the determination in that case.

The indictment is drawn under the provisions of the Act of 1910, chapter 94, now appearing in the Charter and Public Local Laws of Baltimore City, 1927, as secs. 516 and 516B. Section 516 provides: "That eight hours shall constitute a day's work for all laborers, workmen or mechanics who may be employed by or on behalf of the Mayor and City Council of Baltimore, except in cases of extraordinary emergency, which may arise in time of war or in cases where it may be necessary to work more than eight hours per calendar day for the protection of property or human life; provided, that in all such cases the laborer, workman or mechanic so employed and working to exceed eight hours per calendar day shall be paid on the basis of eight hours constituting a day's work; provided further, that the rate of *per diem* wages

paid to laborers, workmen or mechanics employed directly by the Mayor and City Council of Baltimore shall not be less than two dollars *per diem;* provided further, that not less than the current rate of *per diem* wages in the locality where the work is performed shall be paid to laborers, workmen or mechanics employed by contractors or sub-contractors in the execution of any contract or contracts, in any public work within the City of Baltimore."

According to the provisions of section 516B, any contractor or subcontractor, or other person acting for them, violating any of the provisions of this act, is subject to a fine of not less than ten dollars nor more than fifty dollars for each and every offense.

The pertinent language of the first count of the indictment is that the appellees "on the ninth day of May, in the year of our Lord nineteen hundred and thirty-one, at the City aforesaid being then and there subcontractors engaged in the execution of a contract in public work within the City of Baltimore, unlawfully did pay less than the current rate of *per diem* wages in the locality where the work was performed, to laborers, workmen and mechanics employed in the execution of a contract in public work, within the City of Baltimore, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State." The remaining counts charge the offense in the words of the first count, except that the payment is alleged to have been made on other and different dates.

The appellees contended in the trial court that their demurrer to the indictment should be sustained for two reasons, first, because the statute involved is unconstitutional as to its minimum wage feature; and, second, because the particular act which constituted the alleged offense is not described with sufficient accuracy and definiteness to inform the accused of what he is called upon to defend, and protect him against future prosecution.

The trial judge held the statute valid, but that the indictment was fatally defective for the second reason above stated,

sustained the demurrer and discharged the traversers. Our views being in accord with the lower court on the second point, and so requiring an affirmance of the order appealed from, it is unnecessary to discuss the constitutionality of the minimum wage provision of the statute.

It will be noted that the indictment charges the offense in the words of the statute. The State contends that such statement of the charge is all that the law requires, and cites decisions of this court in support of that proposition.

It is no longer open to controversy in this state that the general rule, as contended for by the appellant, is firmly settled. That is to say, in indictments for statutory offenses in describing the act, the doing of which, or omitting to do which, constitutes the crime, it is sufficient to describe said act in the words of the statute. *Bosco v. State,* 157 Md. 407, 146 A. 238, and cases there cited, to which might be added many others. The effect of these decisions is to hold that the pleader, in describing the act of the accused which is sought to be punished, can safely use the words employed by the Legislature; and generally this will be sufficient. But this does not mean that it is unnecessary to allege such facts in connection with the commission of the offense as will certainly put the accused on full notice of what he is called upon to defend, and establish such a record as will effectually bar a subsequent prosecution for that identical offense. In other words, the language of the statute, when used, is a sufficient description of the crime; and if the statute contains all of the elements necessary to constitute a crime, the indictment is sufficient to describe the offense, if laid in the words of the statute. However, it is clear that an indictment which charges the accused with the act prohibited by the statutory language, and does nothing more, would be fatally defective in failing to allege such other facts as would enable the accused to prepare his defense. "In all criminal prosecutions, every man has a right to be informed of the accusation against him," and "to have a copy of the indictment or charge in due time (if required) to prepare

for his defense." Article 21, Maryland Declaration of Rights.

In *Goeller v. State,* 119 Md. 61, 85 A. 954, 955, Judge Pearce, speaking for the court, in respect to this article, said: "The information hereby guaranteed to him is not to be conveyed by word of mouth, nor by any other means than by 'a copy of the indictment or charge,' or accusation, upon which he is to be tried, and it is a guaranty that he must be informed of the whole charge or accusation against him, and not of a part only. The reason for this is given in the same article of the Declaration of Rights, viz., 'to prepare for his defense,' and this he cannot do without a full knowledge, both of every element of the offense charged and of the penalty or penalties to which he may be subjected in event of conviction."

In *State v. Nutwell,* 1 Gill, 54, it was said: "Certainty to a reasonable extent is an essential attribute of all pleading, both civil and criminal, but is more especially necessary in the latter, where conviction is followed by penal consequences. One of its objects is notice to the party of the nature of the charge, against which he is to come prepared to defend himself; and it is also necessary, not only that the offense may be displayed upon the record, so as to enable the court to pronounce the sentence of the law, but to enable the party to defend himself against a second prosecution for the same crime, by pleading a prior acquittal or conviction." The indictment in that case was under the Act of 1817, ch. 227, which made it unlawful for any licensed retailers in Calvert County to suffer any slave to be in a storehouse where they were accustomed to sell liquors, between sunset in the evening and sunrise of the succeeding morning. The indictment charged that the accused, being then and there a licensed retailer, suffered a slave to be in his storehouse, where he was accustomed to sell liquors, between the prohibited hours. It did not allege the name of the slave or any method of identifying him. The court said: "In the case now before this court, the indictment, we think, is defective, in omitting the name of the slave and that of the

master, if known, if not known, the fact should have been so stated in the indictment. Such an averment in the indictment was requisite, not only to inform the accused of the charge alleged against him, so as to prepare for his defense, but to prevent a second punishment for the same offense, by pleading in bar a former acquittal or conviction."

In *Mincher v. State,* 66 Md. 227, 7 A. 451, the statute involved required each registration officer in Baltimore City, within three days after the expiration of his September sitting, and within the same time after his October sitting, to "make, complete and publish two alphabetical lists, one of which shall comprise the names of those persons whom" he has "stricken from" the registry of qualified voters, and the other "shall comprise the names and residences of the persons whom" he has "newly registered as qualified voters" at his preceding sitting, and also the names of those whom the judges have ordered to be registered, and "shall cause said respective lists to be published by handbills posted in such public places as he may select in his election district or election precinct." The count of the indictment upon which the accused was convicted charged in substance the violation of the above-quoted part of the statute. The penal clause of the act made it a misdemeanor and provided a penalty "if any officer of registration shall do any act which is by this act forbidden to be by him done, or shall omit to do any act which is by this act required to be by him done." One of the grounds of the demurrer to the indictment was that it failed to state the names of the registered voters untruthfully set forth in the published list as having been stricken from the registration books. This contention was overruled below, and that action was sustained on appeal, for the reason that the publishing of an incorrect list was the act prohibited by the statute; therefore the offense was committed when such incorrect list was published, and it was unnecessary to allege the number or names of the individuals which appeared upon the incorrect list.

After stating the contention of the traverser, Judge Miller said: "But this is not an indictment for a common-law of-

fense, but for an offense created by statute, and in such cases the general rule is that the indictment is sufficient if it follows the language of the statute. * * * Setting out of names is no doubt essential in indictments under a certain class of statute, such as those prohibting the sale of liquor without license, or to minors, or on Sunday, or on election day; because in such cases each sale is a separate offense, and the party may be indicted for each. In such cases the name of the party to whom the liquor was sold must be stated, if known, and, if unknown, it must be so alleged. This class of cases is well illustrated by that of *State v. Nutwell*, 1 Gill, 54, where the court said, the setting out of the name of the slave and his master, if known, or, if not, so to allege, was requisite not only to inform the accused of the charge alleged against him, so as to enable him to prepare for his defense, but to prevent a second punishment for the same offense, by pleading in bar a former acquittal or conviction. In other words, the indictment must be so framed as to enable the accused to defend himself against a second prosecution for the same crime. This case has been followed in all subsequent cases in this state, under similar statutes. But in the case now under consideration the naming of the parties improperly included in the list is, as it seems to us, not essential on either of the grounds stated in *State v. Nutwell*. The offense, as we have construed the statute, consists in making out and publishing a false list of the names of voters stricken from the registry, and such list becomes false by including therein the names, whether few or many, of voters who had not been stricken off. The offense is one and entire, and there cannot be separate indictments for each name thus wrongfully included. Conviction under this count is therefore a complete bar to any subsequent prosecution. Nor do we think that specifying the names of these parties would have afforded the accused any aid in preparing for his defense. A mere comparison of the list published with the list of registered voters was all that was needed, either for the state or the traverser."

154

In *Armacost v. State,* 133 Md. 289, 105 A. 147, 148, where the indictment was under a statute which made it an offense to obtain money, credit, goods, wares, or anything of value by means of false pretense, Judge Urner said: "It is a settled rule that a statutory offense is sufficiently charged if the indictment describes it in the language of the statute by which it is created. *State v. Edwards* [124 Md. 592, 92 A. 1037], *supra; Mulkern v. State,* 127 Md. 43, 96 A. 3; *Smith v. State,* 130 Md. 484, 100 A. 778. This rule has reference simply to the definition and characterization in legal terms of the criminal offense to be alleged in the indictment. It does not affect the requirement that the indictment should sufficiently identify the specific charge intended to be preferred. In this instance the offense defined by the statute is the act of obtaining property, with intent to defraud, by means of a check for which no means of payment had been provided. Such an offense could be described in the language of the statute without any identity being given to the particular charge. In describing the check alleged to have been used as a false pretense the present indictment does more than follow the mere language of the statute, and furnishes an important part of the information which is held to be requisite in such cases. But in omitting any allegation as to the nature or ownership of the 'credits, goods and wares,' to which it thus indefinitely refers it disregards a rule of criminal pleading which is useful and reasonable in its purpose and capable of being readily observed, and we must therefore hold that the demurrer should have been sustained."

In the recent case of *Bosco v. State, supra,* this court, speaking through Judge Adkins, said: "The indictment is laid in the language of the statute. Whatever may have been decided elsewhere, it would seem that in this state it is not open to question that a statutory offense is sufficiently charged, if the indictment is laid in the language of the statute. * * * Of course the particular act which constitutes the crime must be so described as to inform the accused of what he is called upon to defend, and must be identified

with sufficient accuracy to protect him against future prosecution for the same offense. The distinction between the description of the particular act and its characterization as a crime is clearly stated in *Armacost v. State, supra.*"

We have been unable to find any cause in this state upholding an indictment under that class of statutes spoken of by Judge Miller in *Mincher v. State, supra,* illustrated by statutes prohibiting the sale of liquor on Sunday, where the name of the party to whom the liquor was alleged to have been sold has been omitted. We are of the opinion that the statute now before us is of that class, and that the indictment should contain an allegation setting forth the names of the "laborers, workmen or mechanics" who were paid, on the date alleged, less than the current rate of *per diem* wages in the locality where the work was performed.

In two of the cases before us the accused are individuals; in the others they are corporations. The allegation is that they are either contractors or subcontractors engaged in public work within the City of Baltimore. The fair assumption from this allegation is that they employ numerous laborers, workmen, and mechanics on such public work, and that such employees fall into various classes, between which the current rate of *per diem* wages in the locality is different. The law presumes every accused to be innocent; and if so, to prepare a proper defense against the charge alleged, they would be compelled to consider every employee to whom payment had been made on the date specified in the indictment and each count thereof, determine the classification to which each belonged, and be prepared to prove that the amount paid each individual was not less than the current rate of wages in the locality where the work was done. This, it seems to us, is a burden which the law should not, and does not, place upon the accused, and would be in contravention of the ancient rule of the common law, now embodied in the Maryland Declaration of Rights, that the accusation or charge must be such as to enable the accused to prepare his defense, and serve as a bar to future prosecution for the same act. If the names of the employees, so alleged to have been under-

paid on the date named, are set forth in the indictment, the accused would not only be informed of the individual employee so alleged to have been underpaid, but would also know the amount paid him, and the classification of workman to which he properly belonged. This would be a sufficient description of the particular act for the doing of which the accused is called upon to answer, and would in no way modify or weaken the general rule that the characterization of the offense is sufficiently set out by employing the words of the statute. Every charge or accusation, whether at common law or under statute, must include at least two elements: First, the characterization of the crime; and, second, such description of the particular act alleged to have been committed by the accused as will enable him to properly defend against the accusation. In statutory crimes, where the statute includes the elements necessary to constitute a crime, the first of these requirements is gratified by characterizing the offense in the words of the statute; the second requires such definite and specific allegations as reasonably to put the accused on notice of the particular act charged, to enable him to prepare a defense and plead the judgment in any subsequent attempted prosecution. In the indictment before us the first of the above requirements is complied with by characterizing the offense in the words of the statute, but it is defective in failing to meet the second requirement.

It is argued by the State that the accused is entitled to demand a bill of particulars, which, if furnished, would supply the deficiencies of the indictment; but the quotation from *Goeller v. State, supra,* holds that the information guaranteed to the accused is not to be conveyed by word of mouth, nor by any other means than by a copy of the indictment, charge, or accusation upon which the accused is to be tried. The demand for a bill of particulars is a privilege afforded to the accused and addressed to the discretion of the court. This rule was recognized in *Lanasa v. State,* 109 Md. 602, 71 A. 1058, 1062, wherein it was said: "We cannot review the action of the lower court in refusing to require the State to elect between certain counts and in overruling

the appellant's demand for a bill of particulars. Those motions were addressed to the sound discretion of the court, and its action upon them is not the subject of an appeal in the absence of some gross abuse of discretion in the lower court resulting in injury to the accused."

In *Neusbaum v. State*, 156 Md. 149, 143 A. 872, 874, the indictment charged that the accused "feloniously and negligently did kill and slay William Powell, contrary to the form of the Act of Assembly in such case made and provided and against the peace, government and dignity of the State." This form is that provided by the Code, and on appeal, in considering a demurrer to the indictment, Judge Offutt, speaking for the court, stated: "The only question is whether it was necessary to allege the manner and means of the killing. The statute expressly says that it was not. Code, art. 27, sec. 563. And unless the manner and means of death were essential elements of the crmie of manslaughter, allegations as to them were not required in order to inform the accused of the accusation against him as required by article 21, Declaration of Rights. The question is by no means free from doubt, for, while ordinarily the manner and means of death are mere incidents and form no part of the crime itself, yet it is quite possible that cases might occur when the bald charge that one at a certain time at a certain city feloniously killed another would afford him practically no information upon which he might base his defense. If in fact he had killed the person named in the indictment, he would naturally know of the circumstances, but, if he had not, it might become of the utmost importance for him to know how and by what means the homicide occurred, and the indictment would furnish him no information as to those facts at all. But that difficulty is met to some extent by the rule which allows the defendant the right to demand of the State the particulars of the offense with which he is charged, where the indictment is so general that it discloses no information sufficient to afford him a fair and reasonable opportunity to meet it and defend himself. *Wharton Cr. Proc.*, par. 1637. And that right was recognized by this court in

*Lanasa v. State,* 109 Md. 612, 71 A. 1058, and, while such a motion or demand is addressed to the discretion of the court, nevertheless it is a sound discretion and may be reviewed where there is a gross abuse of it, resulting in injury to the accused."

It is settled that the accused can ask for a bill of particulars, which may or may not be allowed, in the discretion of the trial court, whose action is not open for review in this court, unless upon a showing of gross abuse resulting in injury to the accused. While this is true, the bill of particulars is no part of the indictment; and the State cannot supplement an indictment by a bill of particulars to validate an otherwise defective indictment. *Delcher v. State,* 161 Md. 475, 158 A. 37, and cases there cited. The accused has the right to stand on the indictment, and if that be insufficient in law, a demurrer to it should be sustained. It may very well be, and does often occur, that the accused, when faced with a legal indictment, pleads guilty to the charge therein preferred; but an indictment which does not allege the offense with sufficient definiteness to make a plea of guilty thereto a bar to subsequent prosecution is defective. It would be illogical to hold that an accused must demand a bill of particulars in order to perfect a legal charge against him, and such is not the requirement. The rule allowing a bill of particulars is for the benefit of the accused. He may, but is not bound to, request it; and if he does not, he is entitled to attack the validity of the charge as made out by the indictment. To hold otherwise would be to say that no indictment could be attacked by demurrer by an accused, for vagueness or indefiniteness of its allegations, without first demanding a bill of particulars.

Entertaining these views, the order of the lower court must be affirmed.

*Order in No. 16 affirmed, and case remanded; order in No. 17 affirmed, and case remanded; order in No. 18 affirmed, and case remanded; order in No. 19 affirmed, and case remanded.*