# ALLEN B. SPECTOR, MAURICE R. WYATT AND DONALD H. NOREN v. STATE OF MARYLAND

[No. 61, September Term, 1980.]

*Decided January 22, 1981.*

The cause was argued before SMITH and COLE, JJ., and FREDERICK J. SINGLEY, JR., and CHARLES E. ORTH, JR., Asso-

ciate Judges of the Court of Appeals (retired), specially assigned, and JAMES C. MORTON, JR., C. AWDRY THOMPSON and EDWARD O. WEANT, JR., Associate Judges of the Court of Special Appeals, specially assigned.

*Russell J. White* for appellant Noren. *H. Russell Smouse,* with whom was *George F. Pappas* on the brief, for appellant Wyatt. *Paul Mark Sandler,* with whom were *Raymond Daniel Burke* and *Freishtat, Schwartz & Sandler* on the brief, for appellant Spector.

*Gerald C. Ruter, Assistant State Prosecutor,* with whom were *Stephen H. Sachs, Attorney General, Deborah K. Handel, Assistant Attorney General,* and *Gerald D. Glass, State Prosecutor,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here affirm the judgments entered against Allen B. Spector, Maurice B. Wyatt, and Donald H. Noren on three charges of bribery in violation of Maryland Code (1957, 1976 Repl. Vol., 1980 Cum. Supp.) Art. 27, § 23.[1]

### i. Background

On September 13, 1973, May 14, 1974, and May 24, 1974, the Secretary of Health and Mental Hygiene issued orders effecting a moratorium on connections of sewers for new buildings in certain areas of Baltimore County. Samuel Gorn, Richard Davison, and Bernard Rome were developers adversely affected by the moratorium. They sought relief from the Board of Review of the Department of Health and Mental Hygiene in the form of exceptions to the moratorium.

Spector, Wyatt, and Noren are members of the bar. At the times here relevant Noren was an Assistant Attorney Gen-

---

1. The incidents in question took place in 1974 and early 1975. Thus, it would be the law as it existed then which would be applicable. Changes since that time have no effect upon the portion of the statute relative to this proceeding.

eral of Maryland whose duties included representation of the Environmental Health Administration, a part of the Department of Health and Mental Hygiene, in the matter of such exceptions before the Board of Review. Spector and Wyatt were practicing lawyers in Baltimore City.[2] Spector was a member of the Baltimore City Council.

Three indictments were returned against Spector, Wyatt, and Noren by the Grand Jury of Baltimore City. The first count of the first indictment charged that Spector and Wyatt "on or about September 5, 1974, . . . did unlawfully, willfully, and corruptly pay a bribe, reward, fee, and testimonial, to wit: two thousand five hundred dollars . . . to Donald H. Noren, being then and there an Assistant Attorney General for the State of Maryland . . . for the purpose of influencing him in the performance of his official duties in violation of Article 27, Section 23, Annotated Code of Maryland . . . ." The second count charged Noren with having on the same day "unlawfully, willfully and corruptly receive[d] a bribe" in that amount from Spector and Wyatt "in the performance of his official duties" in violation of Art. 27, § 23.

The second indictment in similar language charged Spector and Wyatt with having paid a bribe to Noren in the amount of $1,500 on October 27, 1974. It likewise charged Noren in language similar to the first indictment with having received that sum at that time.

The third indictment in similar language charged that on February 10, 1975, Spector and Wyatt paid the sum of $1,650 to Noren as a bribe. It likewise charged Noren with receiving such an amount as a bribe at that time.

The statute in question, Art. 27, § 23, provides in pertinent part:

> If any person shall bribe or attempt to bribe . . . any officer or employee of the State . . . in order to influence any such officer or person in the performance of any of his official duties; and if . . . any

---

2. Spector qualified as a judge of the District Court of Maryland on June 22, 1977.

officer or any employee of the State ... shall demand or receive any bribe ... for the purpose of influencing him in the performance of his official duties, or for neglecting or failing to perform the same, every such person so bribing or attempting to bribe any of such officers or persons, and every such person so demanding or receiving any bribe ... shall be deemed guilty of bribery ....

The defendants elected a court trial. The case was heard in the Criminal Court of Baltimore by Macgill, J.[3]

Each of the defendants was sentenced to two years in the care of the Department of Correction on each of the counts. Sentence was suspended in each instance and each defendant was placed on two years unsupervised probation. In addition, a fine of $5,000 on each of the three counts was levied on each of the defendants.

An appeal was promptly noted to the Court of Special Appeals. Since pursuant to Maryland Rule BV16 we had suspended each of these attorneys from the practice of law by reason of these convictions, we issued a writ of certiorari ex mero motu to the Court of Special Appeals because a by-pass of that court would expedite the ultimate disposition of these proceedings.

## ii. Appellants' contentions

The appellants claim (1) that since each of the indictments was "couched in [the] generic terms of the statute, alleging payments to 'influence official duties', [they] were denied apprisal of the specific charges against them, guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and Article 21 of the Maryland Declaration of Rights, when the trial court did not grant demands for bills of particular, which requested disclosures of the

---

3. Pursuant to Constitution of Maryland Art. IV, § 3A and Maryland Code (1974, 1980 Repl. Vol.) § 1-302, Courts and Judicial Proceedings Article, Judge Macgill, former Chief Judge of the Fifth Judicial Circuit, was recalled from retirement and assigned to try this case.

specific official duty(ies) or act(s) of Noren which Wyatt and Spector allegedly sought to influence"; (2) that in order to sustain a conviction of bribery pursuant to Art. 27, § 23 "the State must prove the specific official act(s) or duty(ies) of Noren, which Wyatt and Spector allegedly sought to influence, in that it is the essential element of *quid pro quo* that distinguishes the specific criminal intent underlying bribery from the *mens rea* of other related crimes, such as accepting an unlawful gratuity," which it is contended the State failed to do; (3) that if, "assuming *arguendo* the State is not required to prove the specific act sought to be influenced, there was [no] legally sufficient evidence of a corrupt agreement to sustain a conviction of bribery"; and (4) that the trial court failed to comply with Rule 735 "when it did not fully apprise Defendants of their right to trial by jury on the first day of trial, although such advice was rendered during a pre-trial proceeding."

### iii. The facts

The trial judge said from the bench in making his findings of fact:

> I must reach my conclusions on the evidence whether by way of testimony, or by way of documents which have been admitted for my consideration.
>
> As the State has said in this case the evidence, or these cases, there are three of them being tried together in effect, the evidence it relies on to establish these cases is circumstantial.
>
> Circumstantial evidence is not weaker, or of a lesser quality than other kinds of evidence. In these cases, and as I said before, these cases have been consolidated for trial, the evidence establishes beyond a reasonable doubt, and I do not think that it is even disputed, that Mr. Noren, at the time of the incidents described, was an officer or employee of the State, an Assistant Attorney General. I think

that the evidence also, in each case, establishes beyond a reasonable doubt, that Mr. Noren received payments of money which were derived from the three applicants or developers who testified, and that he received these payments from Mr. Wyatt and these payments were part of the sums received by Judge Spector, as fees from each of the applicants. So, in each case, Mr. Noren, the public official, received something of value derived from the matters pending before the Department which he represented. These facts, of course, do not make him guilty of bribery, nor do they make Judge Spector or Mr. Wyatt guilty of bribery. To find one or more of these defendants guilty of bribery, it must be established beyond a reasonable doubt that the moneys were paid and received pursuant to a corrupt agreement. The State contends that various incidents described in the evidence show, circumstantially, that there was such a corrupt agreement in each instance.

\* \* \*

Before detailing the circumstantial evidence in these cases, on which, as I understand it, the State is relying, I should point out that in these cases, as in others, each specific incident or detail, in itself, cannot be considered separately. All incidents or details, considered cumulatively, are what matter.

Each of the three associations, or what I will call developers, and I will refer to them by the names of the parties who testified as their representatives, the evidence shows were placed in serious or desperate financial straits by the imposition of the sewer hook-up moratorium on May 14, 1974. According to the evidence each day the moratorium remained in effect as to them their financial conditions worsened. The first two, Mr. Gorn and Mr. Davison, engaged lawyers who resorted to orthodox

legal proceedings to get relief for their clients. Colonel Rome tried the same avenues on his own. The first two, without abandoning the counsel they had retained, turned in addition to Judge Spector. None of the three, I think it is significant to say, could recall precisely who referred Judge Spector's name to them. Mr. Gorn, if you believe this part of his testimony, retained Judge Spector simply to keep him posted as to what was going on. Peculiarly, however, according to Mr. Gorn, he retained Mr. Spector on a contingent fee basis, contingent on his securing relief from the moratorium and while seeking of that relief was in the hands of other counsel. Judge Spector labeled this fee an "annual retainer." Mr. Davison went to see Judge Spector because he felt that since Judge Spector was a city councilman, "He knew his way around in the bureaucracy and could expedite things." Colonel Rome was advised that a stipulation had to be prepared with Mr. Noren before he could get a hearing. He testified that he had difficulty getting together with Mr. Noren. Finally, he retained Judge Spector. He made a kind of contingent fee arrangement with Judge Spector, of the five thousand dollar fee requested by Judge Spector, he agreed to pay $2500.00 after he received a hearing before the Board of Review and the remaining $2500.00 only if the Board granted him the relief which he sought. Of course when I refer to "the Board" I am referring to the Board of Review.

Rather promptly, after his clients met with success and after he was paid the agreed fees, Judge Spector paid a portion of them to Mr. Wyatt and Mr. Wyatt in turn, and just as promptly, paid a portion of his portion over to Mr. Noren. It is of some significance, I think, that the amounts paid to Mr. Wyatt went into his personal account and from that account he paid Mr. Noren who deposited his portions in his personal account. I think that it is also

of some significance that Judge Spector's files, aside from the stipulation prepared for Colonel Rome, contain, so far as I could observe, no lawyer's work product done by him, nor any evidence of any work done for him by Mr. Wyatt. I should also mention that State's Exhibit 38A and 38B show that the check for $1600.00 issued by Judge Spector to Mr. Wyatt was labeled "Referral-Butterfield case." Butterfield, as you will recall, was a case which involved a personal injury claim and with which Mr. Wyatt had no connection whatsoever. Likewise, State's Exhibits 43A and 43B show that the check in the amount of $1700.00, issued by Judge Spector to Mr. Wyatt was labeled, "Referral fee." that was by the secretary, as I recall. Although it does not appear from the testimony that Mr. Rome who paid the fee to Judge Spector, he never had contact with Mr. Wyatt.

I believe that it was suggested to me in closing argument that I should not consider anything as to which there was no proof, specifically that Mr. Noren, Mr. Wyatt's partner, knew the source of the payments remitted to him by Mr. Wyatt. I think that I, like a jury, may use my common sense and experience in life in evaluating evidence and on that basis it is difficult for me to believe that persons dealing in commercial transactions, much less partners and friends, transfer substantial sums of money to each other without either explanation or inquiry. A reasonable inference, from the evidence, I think would be otherwise. It was also urged that the State should have made out a better case by calling some of the members of the Board of Review to show that Mr. Noren, in his relations with that body, did or did not do anything untoward, or something untoward, I should say. Of course, my role is not to demand that the State produce certain elements of proof but it is simply to evaluate the proof which the State does produce.

It was also suggested that persons engaged in bribery are not so foolish as to use checks and other documents but would resort to cash transactions. I can only say, from my obervation persons engaged in dubious activities are just as prone to blunder as persons engaged in legitimate activities.

It has been said as to circumstantial evidence that before a verdict of guilty is justified, the circumstances taken together must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence. I find here no reasonable hypothesis or theory of innocence when I consider the circumstances I have mentioned as well as others in evidence which I have considered, but may not have mentioned. In the light of all of the circumstances, taken together, I find in each case, beyond a reasonable doubt, that the moneys which passed from Judge Spector through Mr. Wyatt to Mr. Noren were made pursuant to a corrupt agreement or agreements and constituted bribes offered and accepted.

Bribery, as you know, has been defined as "the corrupt payment or receipt of a private price for official action." Set forth in *State v. Canova,* 278 Md. 483, at page 485 (1976).

In view of the conclusions I have reached, my verdict is that the Defendant, Judge Allen B. Spector is guilty as charged in Indictment Number 17935501; 17935504; 17935507; Mr. Wyatt is guilty as charged in Indictment Number 17935502; 17935505; 17935508; and that Mr. Noren is guilty as charged in Indictment 17935503; 17935506; 17935509.

We shall develop such additional facts as may be requisite in the course of our discussion of the points raised.

### iv. The validity of the indictments

The defendants elected not to challenge the validity of the indictments in the trial court but attempt to do so on appeal. Under Rule 736 a motion asserting a defect in a charging document must be filed within thirty days after the earlier of the appearance of counsel or the first appearance of the defendant before the court "except when discovery is furnished on an issue which is the subject of the motion, then the motion may be filed within five days after the discovery is furnished." Thus, under the rule the point is deemed waived in the case at bar. There having been no challenge to the validity of the indictments in the trial court, their validity is not before us on appeal. Rule 885.

### v. The bill of particulars

We point out that although the appellants suggested in arguments in the trial court that the indictments did not sufficiently inform them of the charges against them, at no time did they mention the constitutional provisions they have raised here.

The demand for particulars alleged that each indictment was "so general as not to give the Defendant sufficient information to prepare a proper defense to the charge." The particulars demanded included the specific official duties or acts of Noren which the defendants "allegedly influenced or sought to influence by the payment of the alleged bribe"; "[t]he specific influence, which the payment of the aforesaid bribe had or was intended to have upon the official duties of . . . Noren"; "[t]he manner in which the State contends there was any deviation from what it maintains was the proper conduct by . . . Noren of his official duties as any such alleged deviations relates [sic] to the charges contained" in the respective indictments; the identity of "those individuals employed by any governmental agency or unit who had authority with regard to the matters complained of in the indictment concerning the exercise by . . . Noren of his official duties," with an indication as to "the nature of the

authority reposed in each such individual and whether that authority was exercised or was to be exercised in any manner in connection with the indictment charged and, if so, in what manner"; the date of the document or documents evidencing the payment of the sums in question, "stating if the alleged payment was made by check, whose signature appears on the check" together with the identity of the custodian of the document; and the date of the document or documents evidencing the performance or contemplated performance of Noren's official duties allegedly influenced or intended to be influenced by the giving of and his receipt of a bribe together with the identity of the custodian of the document.

The State excepted to the demand. The matter was heard by Perrott, J., to whom the case was then assigned. He directed an answer to the first demand. Accordingly, an amended answer was filed stating:

> 1. Part of the duties of Donald H. Noren, as an Assistant Attorney General assigned to the Department of Health and Mental Hygiene was to represent that Department before the Board of Review which determined whether grounds existed upon which to base the granting of exceptions to any moratoriums handed down by the Department. It was Mr. Noren's duties before the Board of Review that Mr. Spector and Mr. Wyatt influenced or sought to influence.

Exception was again taken. An additional answer was required. Pursuant to that ruling the State specified:

> 1. That the duties of Donald H. Noren as an Assistant Attorney General for the State of Maryland assigned to the Department of Health and Mental Hygiene include, but are not limited to:
>
> a) representing that Department as counsel before the Board of Review;
>
> b) preparing Stipulations of Fact to be presented before the Board of Review;

    c) meeting with aggrieved parties of moratoriums or their counsel;

    d) aiding in the preparation of disputes to be presented before the Board of Review; and

    e) arguing for the enforcement of all applicable sections of Article 41 of the Annotated Code of Maryland and the Rules of Procedure of the Board of Review.

Again, exceptions were taken upon which the court ruled:

1. The State is hereby ordered to strike the words "but are not limited to" in paragraph one of the amended answer;
2. The defendant's exception to the State's amended answer is otherwise overruled. The court finds that the defendants are not entitled to any further particularization of the duties of Mr. Noren which the defendants, Wyatt and Spector, allegedly sought to influence in this case.

The defendants sought discovery under Rule 741. The State's reply was filed on January 30, 1980. (The exceptions to the demand for particulars were filed on February 4.) The reply included a statement that upon reasonable notice to the State the defendants or their attorneys might "inspect and copy any books, papers, documents, recordings or photographs which the State intends to use at trial; inspect and photograph any tangible objects which the State intends to use at trial; . . . inspect, copy and photograph any item from or belonging to [each] Defendant"; and "inspect and copy all written reports or statements made in connection with this case by each expert consulted by the State." Obviously, among other things this made available to the defendants copies of the checks which were part of the evidence in this proceeding. The State's answer included the names and addresses of thirty-one persons said by the State to be those then "known that the State intend[ed] to call to prove its case in chief or to rebut alibi testimony . . . ." The

first three individuals listed were Richard Davison, Samuel Gorn, and Bernard Rome, the three persons whose cases were allegedly the subject of the bribery.

Appellants place great weight upon *Russell v. United States,* 369 U.S. 749, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962), referring to language of Mr. Justice Stewart for the Court, 369 U.S. at 765, to the effect that an indictment not framed to apprise the defendant with reasonable certainty of the nature of the accusation against him is defective, although it may follow the language of the statute. That case is inapposite. The defendants were there indicted pursuant to 2 U.S.C. § 192 for having refused to answer questions "pertinent to the question then under inquiry" by a subcommittee of the United States House of Representatives. No issue of particulars was involved. In fact, Mr. Justice Stewart said for the Court, "[I]t is a settled rule that a bill of particulars cannot save an invalid indictment." *Id.* at 770. In the second paragraph of the opinion the Court said:

> In each case the indictment returned by the grand jury failed to identify the subject under congressional subcommittee inquiry at the time the witness was interrogated. The indictments were practically identical in this respect, stating only that the questions to which answers were refused "were pertinent to the question then under inquiry" by the subcommittee. In each case a motion was filed to quash the indictment before trial upon the ground that the indictment failed to state the subject under investigation at the time of the subcommittee's interrogation of the defendant. In each case the motion was denied. In each case the issue thus raised was preserved on appeal, in the petition for writ of certiorari, and in brief and argument here. [*Id.* at 752-53.]

The Court pointed out:

> [T]he very core of criminality under 2 U.S.C. § 192 is pertinency to the subject under inquiry of the

questions which the defendant refused to answer. What the subject actually was, therefore, is central to every prosecution under the statute. Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute. [*Id.* at 764.]

It was in this context that the Court said:

For these reasons we conclude that an indictment under 2 U.S.C. § 192 must state the question under congressional committee inquiry as found by the grand jury. Only then can the federal courts responsibly carry out the duty which Congress imposed upon them more than a century ago:

"The question must be pertinent to the subject-matter, and that will have to be decided by the courts of justice on the indictment." [19] [*Id.* at 771-72.]

The footnote refers to a quotation (369 U.S. at 757) earlier in the opinion in which Senator Bayard, "[t]he principal spokesman for the bill" which enacted the statute in question, was said to have "repeatedly made this very point" on the floor of the Senate when the matter was under consideration as reported in *Cong. Globe,* 34th Cong., 3d Sess. 440 (1857). In short, *Russell* is concerned with the validity of an indictment, not with the issue of whether or not a bill of particulars should be granted.

The matter of particulars was discussed for the Court by Chief Judge Prescott in *Hadder v. State,* 238 Md. 341, 209 A.2d 70 (1965), where the accused stood convicted of first degree murder:

Appellant's request asked for a number of items, including one for the particulars as to "the * * * hypothesis of commission" of the crime charged. We assume that this was an expression of a desire to make the State give the defense its theory of the case. All of the particulars requested were

furnished except this one, and the appellant, without citing a single authority which states that it is proper to require the prosecution to state its theory of a case under a request for particulars, claims prejudicial error.

The contention misconceives the right, *vel non,* to, and the function and office of, a bill of particulars. As a general rule, particulars are not granted as a matter of right, but the granting and denial thereof rest in the sound discretion of the trial court, *Pearlman v. State, supra;* however, the courts of Maryland rightfully have been quite liberal in granting such particulars on proper occasions, and especially when indictments have been drawn in the short forms permitted by statute.

But bills of particulars are intended to guard against the taking of an accused by surprise by limiting the scope of the *proof. Berger v. State,* 179 Md. 410; *Hunter v. State,* 193 Md. 596. They have never, to our knowledge, been utilized for the purpose of requiring the State to elect a theory upon which it intends to proceed. As the Court succinctly stated in *Rose v. United States,* 149 F.2d 755 (C.A. 9): "The purpose of a bill of particulars is to secure facts, not legal theories." In *United States v. Fruehauf,* 196 F. Supp. 198 (U.S.D.C., S.D.N.Y.), the Court named five theories upon which the prosecution might proceed, but denied a motion for a bill of particulars which asked that the Government be required "to state which of the theories it is relying upon and to state, if its claim is based upon any other contention or premise, what such contention or premise is." See also 4 *Wharton's Criminal Law & Procedure* (Anderson), § 1867; Anno.: 5 A.L.R.2d, at p. 459; *United States v. Dilliard,* 101 F.2d 829 (C.A. 2), *cert. den.* 306 U.S. 635. We hold that, under the circumstances here involved, the appellant was not entitled to make the prosecution select and state its theory of the case. [*Id.* at 350-51.]

See also *Veney v. State,* 251 Md. 159, 163-64, 246 A.2d 608 (1968). In *Veney* we emphasized the discretionary nature of a grant of particulars. In *Pearlman v. State,* 232 Md. 251, 192 A.2d 767 (1963), *cert. denied,* 376 U.S. 943 (1964), cited in *Hadder,* Judge Horney said for the Court:

> A defendant is not entitled as of right to particulars. Rule 715 a provides that on motion by a defendant, the court may order the filing of a bill of particulars. But in most cases the grant or refusal of particulars is within the sound discretion of the trial court. *Seidman v. State, supra.* And this Court will not reverse a denial of particulars unless there has been a gross abuse of discretion resulting in injury to the accused. *Leon v. State,* 180 Md. 279, 23 A.2d 706 (1942); *State v. Lassotovitch,* 162 Md. 147, 159 Atl. 362 (1932); *Neusbaum v. State, supra; Lanasa v. State, supra.* In general the rule in other jurisdictions is in accord with that in Maryland. See the annotation in 5 A.L.R.2d 444, 447. [*Id.* at 261.]

To similar effect see *McMorris v. State,* 277 Md. 62, 70, n. 4, 355 A.2d 438 (1976); *Willis v. State,* 205 Md. 118, 126, 106 A.2d 85 (1954); *Thomas v. State,* 173 Md. 676, 197 A. 296 (1938); *State v. Lassotovitch,* 162 Md. 147, 158, 159 A. 362 (1932); *Delcher v. State,* 161 Md. 475, 482, 158 A. 37 (1932); *Avery v. State,* 15 Md. App. 520, 530, 292 A.2d 728, *cert. denied,* 266 Md. 733 (1972), *appeal dismissed,* 410 U.S. 977 (1973), and *Wilson v. State,* 4 Md. App. 192, 202, 242 A.2d 194, *cert. denied,* 251 Md. 753 (1968), *cert. denied,* 394 U.S. 975 (1969).

Chief Judge Brune observed for the Court in *Seidman v. State,* 230 Md. 305, 312, 187 A.2d 109 (1962), *cert. denied,* 374 U.S. 807 (1963), "[A] bill of particulars forms no part of an indictment and hence cannot make an otherwise defective indictment good." In *Delcher* Judge Pattison said for the Court, "[I]t is . . . well settled that, where the indictment is in the usual form and not demurrable on its face, it does not become so when considered in connection with the bill of particulars." *Id.* at 482. To similar effect see the passage we

have already quoted from *Russell,* 369 U.S. at 770, and *Ayre v. State,* 21 Md. App. 61, 63, n. 4, 318 A.2d 828 (1974), citing *Seidman.* Thus, the argument that without particulars the indictment is void is not a good one both because the indictment was not challenged below as well as the fact that particulars are not taken into consideration in determining the validity of an indictment.

Twice in their argument in their brief relative to the bill of particulars the appellants suggest that without that which they demanded they are unable to protect themselves against double jeopardy. This is not correct. In *Cunningham v. State,* 190 Md. 578, 59 A.2d 337 (1948), Judge Collins said for the Court in the context of a contention that an indictment for bribery using the words of the statute "violated fundamental requirements of certainty in criminal pleading, to enable preparation of a defense and to permit a plea of former jeopardy":

> At the trial of the cases under these indictments it was necessary for the State to prove the charges. If the accused were again charged with the same offenses, by producing the records in these cases he would be able to plead the judgments in any subsequent attempted prosecution. [*Id.* at 585.]

This is no less true here. In fact, it is interesting to note that in *Russell* the Supreme Court reached a similar conclusion, stating:

> Since the indictments set out not only the times and places of the hearings at which the petitioners refused to testify, but also specified the precise questions which they then and there refused to answer, it can hardly be doubted that the petitioners would be fully protected from again being put in jeopardy for the same offense, particularly when it is remembered that they could rely upon other parts of the present record in the event that future proceedings should be taken against them. [*Id.* 369 U.S. at 764.]

In *United States v. Schembari*, 484 F.2d 931, 934 (4th Cir. 1973), there was a contention "that the trial court erred in denying [the] motion [of the accused] for a more definite statement . . . to the extent that he was refused an exact description of those actions which allegedly constituted his offense." The court said it construed this "as a motion for bill of particulars under Rule 7 (f) F.R. Crim. P." Judge Murray responded for the court, "Because we believe that the underlying objectives of a Rule 7 (f) motion were fully satisfied by the government's voluntary disclosure of its file, we can find no abuse of the trial judge's discretion. *See* United States v. Sullivan, 421 F.2d 676 (5th Cir. 1970)." *Id.* at 935.

Here, too, as we have already noted, there was a voluntary disclosure of its file by the State. The answers filed by the State in response to the demands of the defendants for discovery included listing the names and addresses of all witnesses the State proposed to call, among whom were the three individuals whose applications before the board were involved in the alleged bribery scheme here. The indictment set forth the approximate dates and amounts of each payment. The file which the defendants were privileged to examine would have revealed the checks in the amounts of the alleged bribes. The particulars specified the duties of Noren. We find no abuse of discretion by the trial court in denying the motion for particulars.

### vi. The need to prove the official duty or duties or act or acts of Noren

The law of bribery, both at common law and by statute, was extensively discussed by Judge Orth for the Court in *State v. Canova*, 278 Md. 483, 485-93, 365 A.2d 988 (1976). See also 2 J. Bishop, *Criminal Law* § 85 (9th ed. 1923); 2 H. Brill, *Cyclopedia of Criminal Law* § 1206 (1923); Clark & Marshall, *A Treatise of the Law of Crimes* § 14.02 (7th ed. Barnes 1967); L. Hochheimer, *Crimes and Criminal Procedure* § 400 (2d ed. 1904); R. Perkins, *Criminal Law* 469 (2d

ed. 1969); and 3 *Wharton's Criminal Law and Procedure* § 1380 (Anderson 1957 and 1979 Supp.). In *Canova* Judge Orth observed for the Court:

> In *Blondes v. State,* 16 Md. App. 165, 184, 294 A.2d 661 (1972), the Court of Special Appeals said that Art. 27, § 23 is not ". . . more all inclusive than common law bribery." The court observed that upon a literal reading of the constitutional mandate set out in Art. III, § 50, ". . . no directive was given that the offense of bribery be provided for by statute; rather it directed legislative enactment of a statute to punish that common law crime. . . ." *Id.* at 182. It found that the statute was declaratory of the common law. We agree that the statute embodies the basic elements of the common law without extending its boundaries to persons outside the ambit of the common law. With respect to the bribe-giver or briber, the statute now in effect speaks of "any person", and like the common law, anyone not entirely without criminal capacity, *see Matter of Davis,* 17 Md. App. 98, 100, 299 A.2d 856, 858 (1973), may be a briber. With respect to the bribe-taker or bribee, however, the statute designates classes, and only a person within one of those classes is a potential bribee. [*Id.* at 490-91.]

It is conceded that Noren comes within the list of persons enumerated in the statute.

Appellants place their principal reliance upon *United States v. Arthur,* 544 F.2d 730 (4th Cir. 1976), and *United States v. Brewster,* 506 F.2d 62 (D.C. Cir. 1974). In *Arthur* the accused was the president, a member of the board of directors, and a major stockholder in a small national bank. He was indicted under 18 U.S.C. § 656 which makes it unlawful for an officer or director of any national bank to embezzle, abstract, purloin or willfully misapply "any of the moneys, funds or credits of such bank . . . ." He received funds from an account which apparently contained the bank's profit from the sale of credit life insurance in connection with its

loan operations. He said he used the money thus obtained to entertain, do favors, and buy gifts for state and party officials who might be influenced in securing government deposits for the bank. It was the government's position that this testimony, if believed, disclosed the use of bank funds to pay unlawful bribes and to make illegal political contributions which would constitute a misapplication of the funds in violation of the statute in question. The court observed, "Not every gift, favor or contribution to a government or political official constitutes bribery. It is universally recognized that bribery occurs only if the gift is coupled with a particular criminal intent," citing cases. *Id.* at 734. Referring to *Brewster,* it stated, " 'Bribery' imports the notion of some more or less specific *quid pro quo* for which the gift or contribution is offered or accepted." *Id.* It further said:

> This requirement of criminal intent would, of course, be satisfied if the jury were to find a "course of conduct of favors and gifts flowing" to a public official *in exchange for* a pattern of official actions favorable to the donor even though no particular gift or favor is directly connected to any particular official act. *United States v. Baggett* (4th Cir. 1973) 481 F.2d 114, *cert. denied* 414 U.S. 1116, 94 S.Ct. 850, 38 L.Ed.2d 744 (1973) (Travel Act prosecution involving alleged bribery of Maryland County Commissioner). Moreover, as the Seventh Circuit has held, it is sufficient that the gift is made on the condition "that the offeree act favorably to the offeror when necessary." *United States v. Isaacs* (7th Cir. 1974) 493 F.2d 1124, 1145, *cert. denied* 417 U.S. 976, 94 S. Ct. 3183, 41 L.Ed.2d 1146 (1974) (construing Illinois statute in a Travel Act prosecution). It does not follow, however, that the traditional business practice of promoting a favorable business climate by entertaining and doing favors for potential customers becomes bribery merely because the potential customer is the government. [*Id.* at 734 (emphasis in original).]

It further said, after reference to the West Virginia statute "which [it said,] reduced to essentials, provides that bribery is the payment or acceptance of '[a]ny pecuniary benefit *as consideration for* the recipient's official action as a public servant or party official . . .' (Emphasis added)":

> The crucial distinction between "goodwill" expenditures and bribery is, then, the existence or nonexistence of criminal intent that the benefit be received by the official as a *quid pro quo* for some official act, pattern of acts, or agreement to act favorably to the donor when necessary. [*Id.* at 735.]

It found that the trial court had erred in its instruction on bribery because it failed "to set forth that distinction with sufficient clarity to enable the jury to determine the legality of appellant's expenditures" by its

> instruction that "payment of money to Government officials for the purpose of obtaining deposits of government funds in the bank and to influence the judgment of such officials in connection with such deposits . . . constitutes . . . bribery . . . ." If "influence" is given its broadest common meaning, it is clear that "goodwill" gifts and favors to and entertainment of government officials are intended to influence the judgment of such officials. That is, such expenditures are made with the hope that the officials will be more likely to award government business to the donor if a favorable business climate is created than if such a climate is not established. But, as is apparent from the discussion above, this type of influence does not amount to bribery. [*Id.* at 735.]

We had occasion to review *Brewster* in *Attorney Grievance Com. v. Brewster,* 280 Md. 473, 374 A.2d 602 (1977). We pointed out that Senator Brewster was indicted and charged with five counts of bribery in violation of 18 U.S.C. § 201 (c) (1). It defines bribery relative to a public official as follows:

(c) Whoever, being a public official or person selected to be a public official, directly or indirectly, corruptly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself or for any other person or entity, in return for:

(1) being influenced in his performance of any official act . . . .

The dismissal of the indictment on constitutional grounds was reversed in *United States v. Brewster,* 408 U.S. 501, 92 S. Ct. 2531, 33 L. Ed. 2d 507 (1972). The case then went to trial on three counts of the original bribery indictment. The jury found him not guilty of bribery but guilty of what the trial judge held to be the lesser included offense of receiving an illegal gratuity in violation of 18 U.S.C. § 201 (g). The D. C. Circuit reversed, holding that the trial judge failed to adequately instruct the jury on the distinction between the acceptance of an illegal gratuity and the acceptance of political campaign contributions. In the course of that opinion the court said:

To accept a thing of value "*in return for:* (1) *being influenced* in [the] performance of any official act" (section (c) (1), emphasis supplied) appears to us to imply a higher degree of criminal intent than to accept the same thing of value "for or because of any official act performed or to be performed" (section (g)). Perhaps the difference in meaning is slight, but Congress chose different language in which to express comparable ideas. The bribery section makes necessary an explicit *quid pro quo* which need not exist if only an illegal gratuity is involved; the briber is the mover or producer of the official act, but the official act for which the gratuity is given might have been done without the gratuity, although the gratuity was produced because of the official act. [*Id.* 506 F.2d at 71-72.]

It is this language upon which appellants rest their contentions here.

There is no marked difference between our bribery statute and the federal statute. However, in Maryland we have no statute concerning illegal gratuities. The view of a United States Court of Appeals that the federal statute requires a quid pro quo, although persuasive, is in no way binding upon us in our determination as to whether the Maryland statute requires such.

In *United States v. Baggett,* 481 F.2d 114 (4th Cir. 1973), the accused was indicted for a violation of the Travel Act, 18 U.S.C. § 1952 and 18 U.S.C. § 2. The Travel Act is significant because it makes unlawful use of any facility in interstate commerce, including the mails, with intent, among other things, to carry on any unlawful act. In § 1952 b "unlawful activity" is defined as including "bribery in violation of the laws of the State in which committed." Baggett had been a county commissioner of Prince George's County from 1954 until his resignation in 1970. From 1964 until his resignation he was chairman of that board which, as the Fourth Circuit put it, "had final authority over all zoning matters and proceedings." *Id.* at 115. He was specifically charged with causing the interstate movement of a check drawn in the District of Columbia by a prosperous builder and developer which check was used in Maryland to purchase a tractor for use on Baggett's farm. It is significant that the Fourth Circuit panel there (which included the author of the opinion in *Arthur*) said:

> The Government's evidence did not show a specific *quid pro quo* from Baggett to Rocks in return for the $3500 check. It did show a course of conduct of favors and gifts flowing from Rocks to Baggett.
>
> * * *
>
> The many instances of favors and gifts accepted by Baggett from Rocks and others receiving favorable rulings from the Board of County Commissioners were ample to show Baggett's corruption by the unprincipled greed of a wealthy man and

Baggett's preference for favors and gifts over his public duty. The jury was clearly authorized to draw the inference and conclusion that the $3500 check represented a payment by Rocks to Baggett for continuing favorable zoning rulings. [*Id.* at 115.]

In *United States v. L'Hoste,* 609 F.2d 796 (5th Cir.), *cert. denied,* U.S., 101 S. Ct. 104 (1980), the court said it was obliged to determine "what constitutes bribery under Louisiana law." *Id.* at 807. It pointed out in n. 14 that the Maryland bribery statute "contains wording similar to the Louisiana statute before [that] court." *Id.* The court said:

The Louisiana statute does not employ the words "as consideration for" or their equivalent to express the intended purpose of the gift. Employed instead are the words "with the intent to influence . . . conduct." The inquiry under the Louisiana statute, then, is whether the gift is made, not as a *quid pro quo* for specific action, but with the intent to influence the conduct of the public servant in relation to his position, employment, or duty. We think this latter inquiry is a broader one than the inquiry presented by the West Virginia statute and that Louisiana designates as bribery conduct that may well be lawful in West Virginia. The *Arthur* definition of bribery, having been fashioned in a context inapposite to the one presented in this appeal, is not persuasive, and the district court was correct in rejecting it. [*Id.* at 807-08.]

The defendants have presented an array of cases which they say support their position. We have examined each and no useful purpose would be served by digesting each of them. Suffice it to say that for various reasons we find the cases not apposite. See, e.g., *People v. Megladdery,* 40 Cal. App. 2d 748, 106 P.2d 84 (1940), cited for the proposition that "the burden on the prosecution was 'to charge and prove that the subject matter upon which the bribe was to operate existed and could be brought before the public officer in his official capacity.' " This statement is from that portion of the opinion

where the court was reviewing a challenge to the validity of the indictment. *Id.* at 782. The next sentence states, "The fact the duty is not specifically conferred upon the officer by statute is immaterial." *Id.* The second count of the indictment there alleged that Megladdery was "the duly appointed, qualified and acting private secretary to the Governor of the State of California"; that while he was in such position he agreed to receive a bribe "upon an agreement and understanding and with the corrupt intent that [his] opinion and action . . . upon a matter then pending and which might be brought [before him] in his official and public capacity . . . should be unlawfully influenced thereby" in that he "would approve, recommend, obtain and procure for [a named individual] a pardon from the Governor of the State of California and would use his influence to persuade the Governor of the State of California to grant [such] a pardon . . . ." It is instructive to note that the court there said:

> 4. It is next urged that the evidence is insufficient to establish the charge set forth in count two of the indictment. This contention is largely based on the arguments urged in support of the contention that the indictment was defective, and for the same reasons is without merit. In addition, respondent points out that Governor Merriam testified that at no time that Megladdery was his private secretary was it ever a part of his duties to investigate, recommend, grant or procure pardons for any person — that it was the duty of another secretary to assist him with pardon applications. Obviously, the official duty of assisting the governor in this regard was imposed on the department of which Megladdery was a member, and, if requested to do so, Megladdery could have performed the work of the secretary assigned to the duty of passing upon applications for pardons. That is all that is required under the above-cited cases. Any other rule would permit public servants to be false to their trust and still escape liability on the

highly technical ground that the particular act for which the bribe was solicited, because of inter-departmental division of work, did not fall within the officer's particular functions, although he could be asked to perform that act at any time. [*Id.* at 783.]

We agree with the Fifth Circuit in *L'Hoste* that what is required under our statute, as in Louisiana, is to show the payment involved, "not as a *quid pro quo* for specific action, but with the intent to influence the conduct of the public servant in relation to his position, employment, or duty [,] ... [an] inquiry [which] is a broader one than the inquiry presented by the West Virginia statute [in *Arthur*] and that [Maryland] designates as bribery conduct that may well be lawful in West Virginia." *Id.* at 609 F.2d 807-08.

vii. Sufficiency of the evidence

Under Rule 886 when an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses. In *Pope v. State,* 284 Md. 309, 396 A.2d 1054 (1979), Judge Orth said for the Court on the matter of appellate review in a criminal case:

The appellate court's function "is merely to decide whether there was sufficient evidence, or proper inferences from the evidence, from which the trier of fact could properly draw the conclusion of the [accused's] guilt, beyond a reasonable doubt." *Brooks v. State,* 277 Md. 155, 161-162, 353 A.2d 217 (1976), and cases therein cited. The trial court, as the trier of facts, is not only the judge of the witness's credibility, but is also the judge of the weight to be attached to the evidence. [*Id.* at 327.]

434

This standard is entirely consistent with that enunciated by the Supreme Court later in the same year in *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

There was ample evidence to sustain each and every finding of fact made by the trial judge. He was correct in his statement that "each specific incident or detail, in itself, cannot be considered separately. All incidents or details, considered cumulatively, are what matter."

In each instance here we have a developer aggrieved by the sewer moratorium who sought help from Spector who had not represented him previously. In each instance the record discloses virtually nothing done by Spector on behalf of his clients. Money was paid to Spector in each instance promptly after the developers represented by him were successful before the Board of Review. In each instance the fee was then very promptly shared by Spector with Wyatt and he in turn shared the fee with Noren. The record shows no work of a legal nature done by them on behalf of the clients. The developers had been unsuccessful until they sought help from Spector. There is no rational explanation for the series of events which here took place other than that the sums in question were paid by Spector and Wyatt to Noren to influence him in the performance of his duties as an Assistant Attorney General of Maryland and that the money was received by Noren with the same intent. All of the circumstances here clearly permit the inference of a corrupt intent. We find sufficient evidence to sustain the convictions.

viii. Claimed lack of compliance with Rule 735

Maryland Rule 735 d states:

If the defendant elects to be tried by the court, the trial of the case on its merits before the court may not proceed until the court determines, after inquiry of the defendant on the record, that the defendant has made his election for a court trial with full knowledge of his right to a jury trial and that

he has knowingly and voluntarily waived the right. If the court determines otherwise, it shall give the defendant another election pursuant to this Rule.

Relying upon *Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979), the defendants contend, "The record in the case *sub judice* does not disclose an effective compliance with the requirement." They point to the proceedings before the trial judge on the morning of trial (June 5) and say that this "waiver was *per se* defective because it failed to explain the composition of a jury, as well as the proper standard of proof that a unanimous jury must find in order to convict." On that morning the trial judge started out by saying to Judge Spector that he wished him "again to *reaffirm* his understanding" of his rights. (Emphasis added.) A similar question was propounded to each of the other defendants. It is acknowledged that a full waiver proceeding was held before the same judge on May 29 but it is contended this "waiver was premature."

The proceeding on May 29 was full and complete in every regard. In fact, Spector, when he was advised, said, "I have given that advice many times myself, Your Honor," referring to his own duties as a judge of the District Court of Maryland.

There is nothing in *Countess* or in the rule which requires that the inquiry after an election of a court trial be on the very day trial begins. Hence, we find this contention to be without merit.

## ix. Conclusion

It follows from what we have said that the judgments against the appellants are to be affirmed.

*Judgments affirmed; appellants to pay the costs.*