## Edward Kearney *vs.* The State of Maryland.

*Defective Indictment under sec. 163 of Art. 30 of the Code, for Receiving United States bonds, knowing them to be stolen—The offences created by secs. 101 and 163 of Art. 30 of the Code, unknown to the Common law—What cannot be supplied by Intendment in an Indictment—What is an essential requisite of an Indictment—How an Offence created by Statute should be described in the Indictment—Defective description of an Offence in an Indictment, being in matter of substance, not cured by sec. 82 of Art. 30 of the Code, nor by the Act of 1862, ch. 80—Effect of a Trial under a defective Indictment.*

An indictment, under sec. 163 of Art. 30 of the Code, charging a party with receiving, well knowing them to be stolen, "four pieces of printed paper commonly called United States five-twenty bonds of the issue of the year eighteen hundred and sixty-five, each of the value of one thousand dollars current money," is fatally defective in that it does not charge in distinct and positive terms that the "four pieces of printed paper" were bonds or certificates of indebtedness issued or "granted by or under the authority of the United States."

The offences created by secs. 101 and 163 of Art. 30, of the Code, were unknown to the common law.

The want of a direct allegation in an indictment of any thing material in the description of the substance, nature or manner of the crime cannot be supplied by intendment. It is an essential requisite in every indictment that it should allege all matters material to constitute the particular crime charged, with such positiveness and distinctness, as not to need the aid of intendment or implication.

In an indictment for an offence created by statute, it is sufficient to describe the offence in the words of the statute, and where the words of the statute are descriptive of the offence, the indictment should follow (in substance at least) the language of the statute and expressly charge the described offence

Kearney *vs.* The State.

on the defendant, or it will be defective. It is necessary that the defendant should be brought within all the material words of the statute and nothing can be taken by intendment.

The defect in the indictment in this case in not properly charging the offence, being in matter of substance and not of form, and the objection being raised by demurrer, is not affected by sec. 82 of Art. 30 of the Code; nor is it cured by the Act of 1862, ch. 80.

A party not having been tried on a valid indictment has not been put in jeopardy, and may on being discharged be re-arrested, re-indicted and tried again.

ERROR to the Criminal Court of Baltimore City.

This case was before the Court on a previous occasion, (46 *Md.*, 422,) when the appeal was dismissed. Subsequently judgment was pronounced in the Criminal Court against the traverser. Shortly thereafter he filed his petition assigning errors which it is not deemed necessary to set out, and praying that a copy of the record in the proceedings might be transmitted to this Court to be examined and reviewed, as upon writ of error. The Court (BROWN, J.,) accordingly ordered that a copy of the record in the case should be transmitted to the Court of Appeals for examination and revision.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Frank X. Ward* and *R. Stockett Mathews*, for the plaintiff in error.

It can hardly be contended that the penalty imposed by sec. 163, of Art. 30, of the Code of Pub. Gen. Laws, was intended to be visited upon the receiver of any kind of a *private* bond, private promissory note, &c., or a private bill of exchange—for by such receiving, the party would only obtain at most a *chose in action*, unless in the case of a promissory note, or bill of exchange, the same were made payable to bearer. If either of those

were made payable to order, it would not be negotiable except by the endorsement of its payee, or by forging his signature—and in the latter case, the forger would be guilty of a felony, and would be prosecuted for that offence, rather than for the misdemeanor of receiving. Looking at the whole law, and examining the context carefully, it seems to be undeniable, that the receiver must receive a bond, or note, &c., issued by or under the authority of the State or of the United States, or some one of them—but the indictment fails to charge the appellant with having received any instrument issued by the authority of either.

It does not charge the appellant with having received either of the "things" enumerated in the second prohibitory clause, but with having received "*four pieces of printed paper.*"

An indictment cannot be sustained for receiving a thing of no intrinsic or artificial value. *State vs. Bryant,* 2 *Carolina L. R.,* 249.

A count for stealing "one piece of paper of the value of one cent" would be good, when a count for stealing a bank note fails in consequence of the instrument being void, but not when it is valid. 1 *Wharton Cr. Law, sec.* 362, *and cases there cited.*

When there is any question as to the application of a statute to a *chose in action,* a count may be introduced for stealing a piece of paper as a common law remedy. In New York, stealing a letter was held not indictable, because of no value; and in England the rule is, that if the piece of paper be *valid,* the indictment must be exclusively for stealing the *chose in action,* in which the piece of paper is absorbed. 2 *Wharton Cr. L., sec.* 1759; *State vs. Edson,* 10 *La. Ann. Rep.,* 229.

Even bank-notes pleaded as such do not pass under "goods and chattels." *State vs. Colvin,* 2 *Zabris.,* 207.

*Bonds* were not held at common law included under *bona et catella.* "Bonds, bills, notes, which concern mere

*choses in action* were also at common law held not to be such goods whereof felony might be committed, being of no intrinsic value, and not imparting any property in possession of the party from whom they are taken." 4 *Bl. Com.*, 234; 2 *East. P. C.*, 597.

Nor the box in which charters concerning land were held. Nor mortgage deeds. A prisoner found guilty of breaking into a house at night with the intent to steal mortgage deeds, the conviction was quashed. *Regina vs. Powell*, 2 *Den. C. C. R.*, 14 *Eng. Law and Eq.*, 493, 575; *Roscoe's Cr. Ev.*, (*new edition*,) 969, in which the whole subject is examined.

The statute undertook only to punish the receiving of any *bond* issued by, or under some public authority, either of this State, or of the United States, or of some other State. It was therefore incumbent on the pleader to charge that the pieces of paper mentioned in the indictment, were bonds issued in the manner set forth in the law, as "bonds issued by or under the authority of the United States."

But the law does not sanction an indictment for receiving a "piece of paper." It enumerates the forbidden things specifically. It is error, therefore, to charge a person with having received *anything* which the law does not prohibit him from receiving. "*A piece of printed paper*" is not a bond. The latter is a mixed instrument. It must have a seal, as all public securities have in fact. It must be signed in writing. It is an impression taken from an engraved plate. When the law says one shall not receive a stolen *bond* of the United States, or issued by their authority, it means that, and if he do receive such a *bond*, he must be arraigned for doing what the law forbids.

This offence was created a distinct crime by statute.

"It is a well settled general principle of criminal law, that in an indictment for an offence *created by statute*, the offence must be described in the words of the statute, and

when the words of the statute are descriptive of the offence, it is necessary that the defendant should be brought within all the material words of the statute." *State vs. Elborn,* 27 *Md.,* 488.

The principal rule as to certainty, required in an indictment is this, where the *definition* of an offence includes generic terms, (as it necessarily must,) either by common law or by statute, it is not sufficient that the indictment should charge the offence in generic terms, but it must state the *species*—it must descend to particulars. 1 *Archbold's Cr. Law,* 87, 88.

The objects to be attained by precision in criminal pleadings are succinctly and lucidly stated in 1 *Starkie's C. P.,* 73.

Where prisoners were indicted for a statutable forgery, but evidence showed only forgery at common law, Mr. Justice MILLS refused to strike out the word "feloniously." *Rex vs. Wright,* 2 *Fost. & Fin.,* 320; *Rex vs. Frost, Dearsley C. C. R.,* 474.

The Act of 1862, ch. 80, permits only the description of "any instrument," by any name or designation by which it may be known. But such permission was designed only to save the necessity of setting out a copy of such instrument, or a fac simile thereof.

Describing a bank-note as a certain note commonly called a bank-note, is not such a description as will warrant a conviction under 2 *Geo.* 2, *ch.* 25 ; 2 *East. P. C.,* 601; *Russ. and Ry. C. C.,* 384; *State vs Price,* 12 *G. & J.,* 260.

The rule for following the words of the statute is to be found in 1 *Bishop Cr. Proc.,* sec. 356, *p.* 252, down to *sec.* 368 inclusive.

As to the requisites for a statutory indictment, the following authorities may be referred to: *Commonwealth vs. McDowell,* 1 *Browne,* 360; 2 *G. & J.,* 246; *Rawlings vs. State,* 2 *Md.,* 205; *State vs. Price,* 12 *G. & J.,* 260; 1

*Wharton's Cr. Law*, secs. 285, 299, 304 ; *Stephens vs. State, Wright's Ohio R.*, 70 ; *Comm. vs. Wright*, 1 *Cushing*, 46 ; *State vs. Nutwell*, 1 *Gill*, 54. Every material fact must be laid. 7 *Vermont*, 209 ; 1 *Stewart*, 318 ; *Comm. vs. Boyer*, 1 *Binney*, 201 ; *U. S. vs. Bowman*, 2 *Wash. C. C.*, 328 ; *Spangler vs. Comm.*, 3 *Binney*, 533 ; *U. S. vs. Keen*, 1 *McLean*, 427 ; *State vs. Hutson*, 2 *Comstock*, 669 ; *State vs. Handy*, 20 *Maine*, 81 ; *Com. vs. Merrefield*, 4 *Metcalf*, 418 ; 12 *Met.*, 240 ; *United States vs. Cruikshank, et al.*, 2 *Otto*, 542 ; 2 *Russell on Crimes*, 260 ; 14 *Cushing*, 142 ; 6 *Cowen*, 9 ; 2 *Hill*, (*S. C.*,) 459 ; 42 *Maine*, 392 ; 34 *N. H.*, 510 ; 5 *Grattan*, 664 ; 1 *Bishop Cr. Pro.*, secs. 356 *to* 360, and cases cited in notes.

*Charles J. M. Gwinn, Attorney General,* for the State.

Under the Act of 1862, ch. 80, Code 1861—1867, p. 86, Art. 30, sec. 87, it is sufficient, in any indictment for receiving any bond, bill obligatory, or certificate, granted by or under the authority of this State, or of the United States, or any of them, knowing the same to be stolen, to describe the instrument, so received, by any name, or designation, by which the same may be usually known, or by the purport thereof, without setting forth any copy, or *fac simile* of the whole, or any part thereof. This rule is applicable whether the instrument consists wholly, or in part, of writing, print or figures.

In the indictment in this case the averment is that the plaintiff in error unlawfully received four pieces of printed paper, commonly called United States five-twenty bonds of the issue of 1865, each of the value of one thousand dollars current money, of the bonds, goods and chattels of one Ernest Newrath ; then lately before feloniously stolen, well knowing the said bonds to have been feloniously stolen.

The plaintiff in error insists that there is error in this indictment, because Art. 30, sec. 163, of the Code, does

not punish the receiving of any piece of printed paper, knowing it to have been stolen.

The objection is not well taken. The words "pieces of printed paper commonly called" may be rejected from the indictment as surplusage. They are wholly unnecessary. The indictment remains good when they are stricken out. *King vs. Andrew Redman and others*, 1 *Leach's Crown Law*, 478, (4 *Eng. Ed.;*) *Rex vs. Sadi and Morris*, 1 *Leach's Crown Law*, 472 ; 1 *Starkie on Criminal Plead.,* (*Eng. Ed.*, 1828,) 247, 248, 249 ; *U. S. vs. Howard*, 3 *Sumner*, 15 ; 1 *Wharton on Crim. Law*, (7 *Ed.*,) sec. 622, and cases cited in note V.

It would have been quite sufficient to have averred in the indictment that the plaintiff in error unlawfully received four United States five-twenty bonds, of the issue of the year eighteen hundred and sixty-five, each of the value of one thousand dollars, of the bonds, goods and chattels of Ernest Newrath, lately before feloniously stolen, well knowing said bonds to have been feloniously stolen.

"An indictment is good which alleges a larceny of a piece of paper, alleging its value, without any further description." *Commonwealth vs. Brettun*, 100 *Mass.*, 207 ; *Rex vs. Meade*, 4 *Car. & Payne*, 535 ; *Regina vs. Perry*, 1 *Car. & Kir.*, 725 ; *Rex vs. Bingley*, 5 *Car. & Payne*, 602, and note a, 603 ; *Regina vs. Rodway*, 9 *Car. & Payne*, 784, (38 *Eng. Com. Law;*) *Rex vs. Clark*, *Russ. & Ryan*, 181.

MILLER, J., delivered the opinion of the Court.

This case is now rightly brought before us by proceedings in the nature of a writ of error after final judgment, and properly presents the question of the validity of the indictment raised by demurrer in the Criminal Court.

The indictment is very brief, and charges that the plaintiff in error, on the 8th of April, 1876, " with force and arms, at the City of Baltimore aforesaid, *four pieces*

*of printed paper* commonly called 'United States five-twenty bonds' of the issue of the year eighteen hundred and sixty-five, each of the value of one thousand dollars, current money, of the bonds, goods and chattels of one Ernest Newrath, then lately before, feloniously stolen, taken and carried away, unlawfully did then and there have and receive, he the said Edward Kearney, then and there well knowing the said bonds, goods and chattels to have been feloniously stolen, taken and carried away, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.''

It is clear beyond question that this indictment was drawn to charge an offence under that part of sec. 163, Art. 30, of the Code, which defines and punishes ''the crime of receiving any bond, bill obligatory or bill of exchange, promissory note for the the payment of money, bank-note, paper bill of credit, certificate granted by or under the authority of this State or of the United States, or any of them, knowing the same to be stolen.'' This and the preceding section 101, of the same Article, relating to the robbery or larceny of these and other written instruments, created new offences unknown to the common law. 2 *East's P. C.*, 597. Now the defect which we consider fatal in this indictment, is that it does not charge in distinct and positive terms that the '' four pieces of printed paper '' were bonds or certificates of indebtedness issued or '' granted by or under the authority of the United States.'' That they were so issued can only be made out by inference from the terms '' commonly called United States five-twenty bonds of the issue of the year eighteen hundred and sixty-five,'' but that is not sufficient. The want of a direct allegation of any thing material in the description of the substance, nature, or manner of the crime, cannot be supplied by intendment, and hence it has always been held, that it is an essential

requisite in every indictment that it should allege all matters material to constitute the particular crime charged, with such positiveness and directness, as not to need the aid of intendment or implication. 2 *Hawk. P. C., ch.* 25, *sec.* 60 ; *Deckard vs. The State,* 38 *Md.,* 201. It is also a well settled rule of criminal pleading that in an indictment for an offence created by statute, it is sufficient to describe the offence in the words of the statute, and where the words of the statute are descriptive of the offence, the indictment should follow (in substance at least,) the language of the statute, and expressly charge the described offence on the defendant, or it will be defective ; it is necessary that the defendant should be brought within all the material words of the statute and nothing can be taken by intendment. 1 *Whart. Amer. Cr. Law, sec.* 364 ; 1 *Bishop's Cr. Procedure, sec.* 360 ; *State vs. Elborn,* 27 *Md.,* 488. Authorities in support of these propositions are too numerous to be cited. We content ourselves with a reference simply to the case of *Rex vs. Craven,* cited in 2 *East's P. C.,* 601, and reported in 1 *Russ. and Ryan,* 14. That case was relied on in *State vs. Price,* 12 *G. & J.,* 264, to support the objection to the indictment there taken. The objection was not sustained, but in overruling it the Court said, that in *Rex vs. Craven* "the felony created by the statute, was the stealing of a bank-note, or promissory note for the payment of money. The charge in the indictment was the stealing of 'a certain note commonly called a bank-note.' And the Court say 'that in the first special description of the property stolen, it being stated only to be a note, was not sufficient, the words of the Act being bank-note or promissory note for the payment of money. And that the addition 'commonly called a bank-note,' 'did not aid such original wrong description.' In the case at bar there was no original wrong description which required aid from the words that were added. On the contrary

the indictment described with technical accuracy in the very language of the Act of Assembly, the offence committed, and such description was neither aided nor impaired by the additional words unnecessarily used." But what was thus said in *Craven's Case* is exactly applicable to the indictment now before us. The special description of the things received is, "four pieces of printed paper." This does not conform to any thing contained in that portion of the statute we have quoted. It is altogether defective in this respect, and is not aided by the addition, "commonly called United States five-twenty bonds." In short the statute creates and punishes with great severity the receiving, knowing them to be stolen, certain instruments importing on their face obligations or promises for the payment of money, and among them it specifies and describes such obligations or certificates "granted by or under the authority of the United States." When the purpose is to charge a party with the offence of thus receiving such instruments, the indictment must charge directly and positively, and not by implication or intendment, that they were so granted or issued. That is not done in the present indictment and it is therefore substantially defective.

This defect being in matter of substance and not of form, and the objection being raised by demurrer, it is plain the case is not affected by any thing contained in section 82 of the same Article of the Code. Nor is it cured by the Act of 1862, ch. 80. That statute dispenses with the necessity of setting out a *copy* or *fac simile* of the whole or any part of any printed or written instrument which it becomes necessary to make an averment respecting in an indictment, and allows it to be described by any name or designation by which it may be usually known, or by its purport. But we are of opinion it was not the design and purpose of this Act to abrogate the well settled rule of pleading in criminal cases which we have already stated.

But it has been argued that the words "commonly called United States five-twenty bonds of the issue of the year eighteen hundred and sixty-five," may be rejected as surplusage, so as to make the indictment charge simply the receiving of "four pieces of printed paper, each of the value of one thousand dollars current money," and that this would be good as an indictment for receiving stolen *goods and chattels* under the first part of the section referred to, which prohibits and punishes "the crime of receiving any stolen money, goods or chattels knowing the same to be stolen." If this could be done, it is clear it would make the indictment a totally different one from what the pleader obviously intended when he framed it. It was said in support of this position, that the Court has no judicial knowledge that there is no "piece of *printed* paper" of the value of one thousand dollars. This may be true, but it would be a different and more difficult matter to say the Court has not judicial knowledge, that no *piece* of paper, *as a chattel*, and apart from what it becomes or is made to import by the *printing* upon it, is of that value. It has been sometimes the practice, under statutes similar to this section of our Code, to introduce into the indictments *separate counts*, charging the larceny or receiving of "one piece of paper of the value of one penny," and in several cases which have been cited by counsel for the State, such counts have been held sufficient to support a conviction. This practice was adopted in order to obviate the difficulty in setting out doubtful instruments, or to meet a failure of proof as to instruments duly charged in other counts. If there had been such separate count in the present indictment, it might, under these authorities, have been sustained. But the question here is not whether such a count would have been good standing by itself, but whether it is allowable for the Court so to deal with the only count in this indictment as to make it a valid charge for receiving "four pieces of

paper," knowing them to have been stolen. In our judgment this cannot be done, and we have not been referred to any authority nor have we found any that would justify it. In England the law seems to be settled that where *choses in action* are valid, the " pieces of paper " on which they are written are absorbed in them, and the indictment must be exclusively for stealing the *choses in action*, and they cannot be properly described in the indictment as goods and chattels. *Regina vs Powell*, 2 *Denn. C. C.*, 403. Here, as we have said, the plain intent was to charge the plaintiff in error with receiving four existing and valid bonds or certificates of indebtedness granted by or under the authority of the United States, knowing them to have been stolen, and it must stand or fall as it is valid or defective for that purpose. We cannot under the license of striking out surplusage, make it an indictment for receiving stolen goods and chattels. *Regina vs. Larkin*, 26 *Eng. Law & Eq. Rep.*, 572.

The demurrer must therefore be sustained and the judgment reversed. But this reversal does not relieve the party from further liability. Not having been tried on a valid indictment, he has not been put in jeopardy, and may, on being discharged from his present imprisonment, be re-arrested, re-indicted and tried again. *State vs. Sutton*, 4 *Gill*, 494; *State vs. Williams*, 5 *Md.*, 82; *Hoffman vs. The State*, 20 *Md.*, 425.

*Judgment reversed.*

(Decided 20th December, 1877.)