## STATE OF MARYLAND *vs.* THOMAS DYCER.

*Criminal Law—Making Pools on Horse Races—Exception of Agricultural Association—Conclusion of Indictments.*

The Act of 1894, chap. 232, provided that it shall be unlawful for any person to gamble or make books or pools upon any kiud of race, or to use or knowingly suffer to be used any place for such purpose. A proviso in the Act declared that it should not be unlawful for any person to bet or make a book or pool within the grounds of any agricultural association upon any race held within the same grounds, race course or driving park "upon the same day on which said race shall be so held on not more than thirty days in any one calendar year." *Held*, that under the Act the making of books or pools, etc., is restricted to the day upon which, and the grounds where, the horse races are run, and that an agricultural association is not authorized to use two or more distinct parcels of land for the purpose of holding races under the exemption conferred by the Act, was to extend the time for the same beyond thirty days in any one calendar year.

The provision of the Constitution requiring that all indictments shall conclude "against the peace, government and dignity of the State" is mandatory, and a demurrer lies to an indictment which does not so conclude.

Appeal as upon writ of error from a judgment of the Circuit Court for Cecil County sustaining a demurrer to each count of the indictment in this case. The indictment was as follows :

The jurors of the State of Maryland, for the body of Cecil County, do on their oath present that Thomas Dycer, late of Cecil County aforesaid, on the 12th day of September, in the year eighteen hundred and ninety-six, unlawfully did gamble and make books and pools on the result of a running race of horses at Cecil County aforesaid, then and there being held, the said gambling and making books and pools on the result of said running race of horses not being then and there held and had within the grounds of any agricultural association, race course or driving park in existence before and at the time the Act of 1894, chapter 232, of the General Assembly of the State of Maryland, became a law, contrary to the form of the Act of Assembly in such case made and provided, and against the peace and government and dignity of the State.

2nd. And the jurors aforesaid, upon their oaths aforesaid, do further present that the said Thomas Dycer, late of Cecil County aforesaid, the twelfth day of September, in the year eigteen hundred and ninety-six, unlawfully did gamble, make books and pools on the result of a running race of horses on the grounds of the Keystone Racing Association of Cecil County, then and there run, had and held, at Cecil County aforesaid, the said gambling and making books and pools on the result of a running race of horses as aforesaid being done, had and held on said grounds and race course, or driving park of a certain Robert S. Lister, but leased, controlled and operated by the said The Keystone Racing Association of Cecil County, after the said Keystone Racing Association had already held, suffered and permitted gambling, making books and pools on the result of running races of horses on other grounds, race courses and driving park owned and operated by the said The Keystone Racing Association of Cecil

County, at Cecil County aforesaid, for thirty days in the calendar year of eighteen hundred and ninety-six; and that the said gambling, making books and pools on the result of said running race of horses by the said Thomas Dycer, at Cecil County aforesaid, was then and there had, held and done on the grounds so as aforesaid leased, controlled and operated by the said The Keystone Racing Association of Cecil County, after the said The Keystone Racing Association of Cecil County had held, suffered and permitted gambling and making books and pools on the result of running races of horses at Cecil County aforesaid, in the calendar year of eighteen hundred and ninety-six, on other grounds owned by said association, for the period of thirty days in said calendar year.

Contrary to the Act of Assembly in such case made and provided.

3. And the jurors aforesaid, upon their oath aforesaid, do further present that the said Thomas Dycer, late of Cecil County aforesaid, on the 12th day of September, in the year eighteen hundred and ninety-six, unlawfully did gamble and make books and pools on the result of a running race of horses then and there run, had and held on the grounds of the " Keystone Racing Association of Cecil County," the said gambling and making books and pools on the result of said running race of horses being had and held at a time when said gambling, making books and pools on the result of any running race of horses on the said grounds of " The Keystone Racing Association of Cecil County," during the said year eighteen hundred and ninety-six, was unlawful, as provided by the Act of 1894, chapter 232, of the Act of the General Assembly of the said State of Maryland, contrary to the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE and BOYD, JJ.

o

*Wm. S. Evans, State's Attorney for Cecil County* (with whom was *Harry M. Clabaugh, Attorney-General*, on the brief), for the appellant.

*John S. Wirt* and *Charles C. Crothers* (with whom was *W. T. Warburton* on the brief), for the appellee.

BRYAN, J., delivered the opinion of the Court.

Thomas Dycer was indicted in the Circuit Court for Cecil County on a charge of gambling, making books and pools in violation of the Act of 1894, chapter 232.

We will inquire into the meaning and effect of the statute before considering the structure of the indictment. Without repeating the somewhat elaborate language of the enactment it may be stated that it forbids acts of two descriptions. It declares that it shall be unlawful for any person to gamble or to make books or pools on the result of a race of any kind; secondly, to use or knowingly suffer to be used any place for the purpose of making or selling therein any book or pool, or otherwise betting therein upon the result of a race of any kind. There is, however, a proviso in the Act which exempts certain cases from its operation. As this clause is in some degree involved in its arrangement and not clearly expressed, we think it better to quote it in full. It is as follows: " Provided nothing in this section shall render it unlawful for any person to make a pool, or a book, or to bet within the grounds of any agricultural sssociation, or upon any horse race which shall be held within the same grounds, race course or driving park, upon which said person shall so make a pool, or a book, or shall so bet upon the same day on which said race shall be so held, on not more than thirty days in any one calendar year." The races to which the Act does not apply are those held within the grounds of any agricultural association ; and those held on a race course or driving park ; and upon these the pool, or book, or bet must be made on the day on which the race is run, and the races on which the

pools, books or bets may be made are not permitted to con-
tinue more than thirty days in any one year. The Act of
1894 was an amendment of the Act of 1890, chapter 206.
By this last mentioned Act this species of gambling was
permitted on horse races on the grounds of agricultural
associations on the days when their fairs were actually held,
and upon any race course or driving park in the State. It
seems sufficiently evident that the purpose of the Legisla-
ture in the particular mentioned was merely to restrict the
gambling to the day on which the race was run, and to
change the period of time allowed to races on which gamb-
ling was permitted. The meaning is not distinctly ex-
pressed, but we cannot discover on the face of the statute
any other purpose which the Legislature could have had.

An agricultural association and an owner of a race course
or a driving park are granted special privileges by this Act.
But the privileges conferred are not indefinite and unlimited.
It could not be supposed that an agricultural. association
would insist that it had the right to use two or more dis-
tinct and separate tracts or parcels of land for the purpose
of holding races under the exemption conferred by the Act.
And by the same reason the owner of a race course or
driving park ought not to insist that he had the right to use
two or more race courses or driving parks under the same
exemption. The comprehensive, absolute and unqualified
expressions used by the Legislature show that they re-
garded this species of gambling as a serious evil, and that
they desired to suppress it. But for reasons which they con-
sidered satisfactory they saw fit to permit it under certain
circumstances for the space of thirty days in any one year.
Now when they made in a guarded manner this exception
to the general scope and operation of statute they cer-
tainly did 'not intend to nullify its provisions altogether.
They conceded to certain persons whose tastes and wishes
they desired to gratify a license under certain prescribed
conditions for the space of thirty days in a year. During
this period, if they complied with the statute, they would be

exempt from its penalties ; its operation would be suspended so far as their actions were concerned.    But it was not intended that they should have the power to free themselves entirely from its authority.    If such were the case the statute would be abortive and nugatory.    If an owner of a race course can extend the exemptions of the statute to two race courses, he has the same right to a dozen, or twenty, or as many more as he chooses to have.    And consequently instead of having a remission of the penalties of the law for only thirty days in a year he would be beyond its control during the entire period.    That is to say it would not bind him at all, or in any respect.    And a few persons co-operating together might with impunity carry on in every county in the State without restraint or limit the gambling denounced by the statute.    We think that it would be an irrational construction, if we should give to an exception which by its terms is limited in time and place the effect of overthrowing the entire body of the law.

Having given as we suppose our views on every debateable question which can reasonably arise on the Act of Assembly, but little need be said on the indictment.    It contains three counts.    There was a demurrer to each count and it was sustained.    It will be seen from an inspection of the first and third counts that we hold them to be defective in substance.    In the second count it is averred that the Keystone Racing Association of Cecil County had held horse races upon race courses owned and operated by it for more than thirty days in the year eighteen hundred and ninety-six in Cecil County, and had permitted on its grounds gambling and making books and pools on the races ; and that thereafter in the same year the said association held another horse race on another race course under its control in Cecil County, and that on the grounds where this last mentioned race was held, Thomas Dycer gambled, made books and pools on the result of the race.    It will be seen that the acts of which Dycer is accused are in violation of the statute ; and that if the association permitted these acts

it also is liable to its penalties.   We must, however, sustain the demurrer to this count, because of a formal defect. The thirteenth section of the fourth Article of the Constitution requires that all indictments shall conclude " against the peace, government and dignity of the State."   This provision is mandatory, and it is our duty to enforce it.   The second count has not this necessary constitutional conclusion, and as the objection is properly presented by demurrer it must be sustained.

*Judgment affirmed.*

(Decided February 24th, 1897).