468 A.2d 1015

**Gary Harrison HALL**

v.

**STATE of Maryland.**

**No. 1740 Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Dec. 19, 1983.

Certiorari Granted May 9, 1984.

Arthur M. Ahalt, Special Judge, dissented and filed opinion.

2

John L. Kopolow, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender on the brief, for appellant.

Carmina Szunyog, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and John Hassett, Asst. State's Atty. for Baltimore City on the brief, for appellee.

Argued before WILNER, WEANT and AHALT, ARTHUR M. (Specially Assigned), JJ.

WILNER, Judge.

In the early morning hours of September 19, 1981, Michael Gossman and Edward Mooney contracted to buy some drugs from appellant. For Gossman, that was a painful mistake; for Mooney, it was a fatal one. An argument arose; a fight ensued; and Gossman and Mooney were both stabbed by appellant. Mooney later died.

As a result of this incident, appellant was convicted by a jury in the Circuit Court for Baltimore City of manslaughter, assault with intent to murder, and carrying a concealed deadly weapon. He was sentenced to prison for nine years for the manslaughter, five years concurrent for the assault, and two years consecutive for the deadly weapon. He argues in this appeal:

"I.   The trial court's failure to give a requested instruction concerning the voluntariness of Appellant's confession was reversible error.

II.   The indictment alleging a violation of the deadly weapons statute, Art. 27, Sec. 36(a), fails to charge an offense.

III.   The evidence was insufficient to sustain the conviction for violating Art. 27, § 36(a)."

We find no error, and shall therefore affirm.

(1) *Jury Instruction*

Part of the evidence admitted against appellant was an inculpatory statement he gave to the police shortly after his arrest. In his first argument, he claims that he asked the court to instruct the jury specifically that the State was obliged to prove, beyond a reasonable doubt, that his state-

**4**

ment was a voluntary one, and that the court declined to give such an instruction.

The record shows that appellant submitted a number of written proposed jury instructions dealing both with the various offenses charged to him and with his defense of self-defense. As to each of these, he asked for a "proof beyond a reasonable doubt" instruction. Conspicuously missing, however, was the instruction about which appellant now complains, or, indeed, an instruction of any kind pertaining to appellant's statement to the police. It appears, however, that, at some point, counsel and the court conferred in chambers with respect to the instructions; and, we are told, at that off-the-record conference, appellant asked for an instruction "pertaining to admissibility or the weight to be given the confession," and the court agreed to give it.

Apparently through inadvertence, the court neglected to give that instruction. It repeated several times that the State was required to prove *guilt* beyond a reasonable doubt, but it made no specific mention of appellant's statement to the police. At the conclusion of the instructions, counsel was given an opportunity to note exceptions, and indeed he did so. He reminded the court that it had omitted to give one of his requested instructions on self-defense and provocation; and the court immediately gave a supplemental instruction satisfactory to counsel. "That's all I have," said counsel.

Not until after the jury returned its verdicts did counsel, in a motion for new trial, call the court's attention to its omission to give the instruction apparently requested in chambers. The court, in denying the motion, concluded that the omission was harmless.

■ We shall decline to consider the issue. In the first instance, we do not even know for certain the precise instruction requested by appellant. It appears nowhere in the record and even the description of it in the colloquy at the hearing on appellant's motion for new trial is quite vague. Moreover, appellant had an opportunity to call the

court's attention to the omission at the conclusion of the instructions, when it could easily have corrected the problem. Whatever the reason for his failure to do so, he cannot sit back, wait for the verdicts (including acquittals on the two murder counts), and then complain in a motion for new trial or on appeal. That is precisely what Md.Rules 757 and 1085 were designed to preclude. *See Medley v. State,* 52 Md.App. 225, 448 A.2d 363 (1982).

### (2) *Indictment*

Md.Code Ann. art. 27, § 36(a) provides, in relevant part, that

"Every person who shall wear or carry any dirk knife, bowie knife, switchblade knife, sandclub, metal knuckles, razor, nunchaku, or any other dangerous or deadly weapon of any kind whatsoever (*penknives without switchblade and handguns excepted*) concealed upon or about his person . . . shall be guilty of a misdemeanor. . . ." (Emphasis supplied.)

In *Mackall v. State,* 283 Md. 100, 387 A.2d 762 (1978), the Court of Appeals concluded that the exception of penknives without switchblades was so incorporated in the clause stating the offense as to make it a part of the offense itself. Thus, said the Court, the State bears the burden of proving that the weapon worn or carried by a defendant charged under § 36(a) was not such a penknife. *See also Washington v. State,* 293 Md. 465, 474–75, 445 A.2d 684 (1982).

Appellant seeks here to extend that holding so as to require the State not only to *prove* that the weapon was not a simple penknife, but also to *allege* that fact in the indictment. Otherwise, he argues, the indictment fails to allege an offense.

The count of the indictment in question charged appellant with wearing and carrying "concealed upon and about his person a certain dangerous and deadly weapon, to wit: a knife, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government

and dignity of the State." Following this language is a parenthetical reference: "(Carrying Concealed Weapon— Art. 27, Sec. 36)."

■ No objection was made to this count of the indictment within the time prescribed by Md.Rule 736, and thus, unless that count fails to state a criminal offense, appellant cannot be heard to challenge its validity now. *Spector v. State,* 289 Md. 407, 417, 425 A.2d 197 *cert. den.* 452 U.S. 906, 101 S.Ct. 3032, 69 L.Ed.2d 407 (1981); *compare State v. Canova,* 278 Md. 483, 365 A.2d 988 (1976); *Brown v. State,* 44 Md.App. 71, 410 A.2d 17 (1979). Relying principally upon *Ayre v. State,* 291 Md. 155, 433 A.2d 1150 (1981), however, in light of *Mackall v. State, supra,* appellant argues just that— that the exemption for penknives is such an integral element of the "carrying" offense that the omission to plead it renders the balance of the averments nugatory.

Appellant's argument is facially plausible; a simple and uncritical merger of the conclusions reached, and some of the language used, in *Mackall* and *Ayre* would seem to suggest the result he posits. But a deeper analysis reveals the fallacy in that argument. A footnote in *Mackall* suggests the fallacy; but it arises from more than a footnote.

The underpinning of appellant's argument is the right of an accused to be informed of the nature of the charges laid against him. The State's obligation to frame a complete indictment,[1] spelling out the offense charged, is but the converse—the obvious corollary—to that right. That right to be informed, in Maryland, arises from three sources: the common law, art. 21 of the Maryland Declaration of Rights, and the Sixth Amendment to the United States Constitution. In a practical sense, however, we are concerned only with the first two. The Sixth Amendment right became applicable to State prosecutions only through its incorporation by the Supreme Court into the "due process" clause of

---

1. For convenience, we shall use the term "indictment" in our discussion. The same rules would apply to a criminal information.

the Fourteenth Amendment; and that did not occur until mid-twentieth century. Prior to that development, the Court of Appeals necessarily worked with the common law and the Maryland Constitution; even afterward, however, though acknowledging the Federal right as "parallel" to art. 21 (*Ayre, supra,* 291 Md. at 168, 433 A.2d 1150), the Court has continued to treat the issue under State law.

Whether utilizing the common law or art. 21, the Court historically has adopted an expansive meaning to the right, and has subjected indictments to strict scrutiny. As far back as *Deckard v. State,* 38 Md. 186, 201 (1873), the Court, without mentioning art. 21, and thus presumably on the basis of common law criminal pleading, required, for a valid indictment, that "all matters material to constitute the crime, are alleged with such positiveness and directness, as not to need the aid of intendment or implication." That was reaffirmed four years later in *Kearney v. State,* 48 Md. 16, 23–24 (1877), where the Court held, again as a matter of common law criminal pleading, that

"[T]he want of a direct allegation of any thing material in the description of the substance, nature, or manner of the crime, cannot be supplied by intendment, and hence it has always been held, that it is an essential requisite in every indictment that it should allege all matters material to constitute the particular crime charged, with such positiveness and directness, as not to need the aid of intendment or implication."

Later cases have used essentially this same language in describing the right afforded by art. 21; and, thus, it seems clear that the common law right and the State Constitutional right (and the State's obligation under each) are not only parallel but identical. *See State v. Canova,* 278 Md. 483, 365 A.2d 988 (1976); *Putnam v. State,* 234 Md. 537, 200 A.2d 59 (1964). Quoting from *Neusbaum v. State,* 156 Md. 149, 156, 143 A. 872 (1928)—which, in turn, quoted from 31 C.J. 651—the *Ayre* Court, at p. 164 of 291 Md., 433 A.2d 1150, reaffirmed the principle that, while the Legislature may simplify the form of an indictment, it "cannot dispense with

8

the necessity of placing therein a distinct presentation of the offense containing allegations of all its essential elements."

■ This, then, is the general rule in Maryland: An indictment must allege all "essential" or "material" elements of the offense; if such an element is omitted, the indictment fails to state the offense; if an offense is not stated, the indictment is fatally defective.

The general rule does not, of itself, resolve the issue before us, however. There is a more specific question: When does an exception to a statutory offense constitute such a material element of that offense as to require its negation in the indictment? When, in other words, does it become necessary to aver the inapplicability of the exception in order to state the offense? That is the point of our concern, and we find that there is a considerable body of law, dating back at least as far as 1841, with regard to it.

From the beginning, the Court of Appeals assumed that there were indeed circumstances under which, in order to charge a statutory offense, an indictment would have to allege the inapplicability (or satisfaction) of statutorily stated exceptions; the problem was in defining those circumstances. In some of the earlier cases, the Court used language suggesting that the State's obligation to negate an exception in the indictment depended on whether the exception was found in the "enacting clause" of the statute. *See, for example, State v. Price,* 12 G & J 260 (1841); *Kiefer v. State,* 87 Md. 562, 40 A. 377 (1898). In *Howes v. State,* 141 Md. 532, 119 A. 297 (1922), however, the Court unequivocally rejected that distinction, and adopted a somewhat more subjective test, which was succinctly summarized as follows in *Spurrier v. State,* 229 Md. 110, 111, 182 A.2d 358 (1962): "Whether an indictment must negative the exceptions in a statute depends not on whether the exceptions are contained in the enacting clause, but on *whether the exceptions are so incorporated with the definition or description of the offense as to constitute a part thereof.*" (Emphasis supplied.)

In the six-score years between *State v. Price* (1841) and *Spurrier v. State* (1962), there has been a legion of cases involving this issue, most of them dealing with exceptions pertaining to either the persons subject to the statutory proscription[2] or the nature of the prohibited act.[3] An examination of these cases reveals two things: (1) the issue has consistently been regarded as a matter of common law criminal pleading, rather than as one directly governed by either art. 21 or its Federal counterpart; and (2) the requirement to negate an exception in an indictment and the requirement to negate it by proof at trial are *not* necessarily governed by the same standards.

*Howes v. State, supra,* 141 Md. 532, 119 A. 297, provides an illustration of both principles. Howes was indicted and convicted under a statute prohibiting the sale of liquor in the City of Annapolis without a license. The statute, after stating the prohibition, provided that it did not apply to sales made by a person under court order or to the sale of cider for consumption off the premises. The non-application of those exceptions was neither alleged in the indictment nor proved at trial; and, although the point pressed by the appellant was limited to the sufficiency of the *indictment,* the Court touched upon both aspects.

*Howes,* as we have noted, was the case in which the Court first clearly stated the current subjective test. Applying the test was another matter, however. Turning first to the issue not really before it—sufficiency of the *evidence*—the Court adopted the approach suggested in 15 R.C.L. 394; *i.e.,*

"where the prosecution shows a sale of intoxicating liquor by the accused within the general prohibition of a statute

---

2. *See Bode v. State,* 7 Gill 326 (1848); *Hays v. State,* 40 Md. 633 (1874); *Kiefer v. State,* 87 Md. 562, 40 A. 377 (1898); *Howes v. State,* 141 Md. 532, 119 A. 297 (1922); *Foxwell v. State,* 146 Md. 90, 125 A. 893 (1924); *Spurrier v. State,* 229 Md. 110, 182 A.2d 358 (1962).

3. *See State v. Price,* 12 G & J 260 (1841); *Barber v. State,* 50 Md. 161 (1878); *Stearns v. State,* 81 Md. 341, 32 A. 282 (1895); *Howes v. State,* 141 Md. 532, 119 A. 297 (1922).

this establishes a *prima facie* case, and the burden is then cast on him to show that the transaction was not in violation of the law because it satisfies a condition under which the sale of liquor has by statute been made lawful."

In the case at hand, the Court continued, at p. 544, 119 A. 297, Howes "knew better than anyone else whether there was a provision of law or order of court requiring him to make the sales complained of." The prosecutor could not be expected to search through court dockets to determine whether such an order existed, and thus could not be required to aver the absence of such an order. Similarly with the question of whether the fluid sold was cider: Howes "would also know whether if he sold cider he was the maker of it, or if it was sold not to be drunk on the premises." *Id.,* at 545, 119 A. 297.

Working backward from that, the Court concluded that in the absence of any indication that Howes actually fell within one of the exceptions it would be silly to reverse the conviction on the basis of an insufficient indictment. At p. 545, 119 A. 297:

"[W]hat a pitiable position the prosecution of the criminal law of this State would be put in, if this judgment was reversed and a new indictment was found, and at the second trial there was no evidence to show that the defendant had made the sales under a provision of law or order of court, or if the State did not claim that he sold cider of any kind."

Continuing in this frankly pragmatic and clearly *ex post facto* vein, the Court observed further, at p. 546, 119 A. 297:

"We would be very loath to reverse the judgment when there is nothing whatever before us to show that the defendant claimed to have acted under a provision of law or order of court in making the sales, or that the State or the defendant claimed that what was sold was cider of any kind or make, and we would not be inclined to do so."

The point here is so clear, simple, and rational. The jury heard the evidence. No claim was made that either of the

exceptions applied. What possible purpose could be served by reversing the conviction because the indictment failed to negate the exceptions?

From *Howes,* we move to *Spurrier v. State,* 229 Md. 110, 182 A.2d 358 (1962), which, as here, involved a prosecution under § 36—carrying a concealed weapon. Section 36—then as now—contained two types of exceptions. Within the proscription of § 36(a), as we have noted, is an exception for penknives without switchblades (and, since 1972, for handguns). In subsection (c) is another set of exceptions. That subsection exempts from criminality the carrying of a weapon mentioned in § 36(a) by certain law enforcement officers, special railway agents, persons having a permit to carry the weapon, and persons carrying the weapon as a "reasonable precaution against apprehended danger."

Spurrier argued that the exemptions under subsection (c) were essential elements of the crime itself and that the State was therefore obliged to negate them both in the indictment and by evidence at trial. He cited as authority three District of Columbia cases in which the Court had concluded that, where a statute prohibited the carrying of a pistol without a license, the phrase "without a license" was not merely an exception to the statute but an integral part of the offense, and that it was therefore necessary both to allege and prove that the defendant did not have a license.

Ignoring the D.C. cases, but citing *Howes v. State,* the Court rejected Spurrier's argument. In a *per curiam* Opinion, it concluded, with respect to the sufficiency of the indictment, that "none of the exceptions is a constituent element of the offense charged in the indictment" and that "the simple allegation that the accused was wearing and carrying a dangerous and deadly weapon concealed upon and about his person was sufficient to inform the defendant of the accusation against him." 229 Md. at 111–12, 182 A.2d 358.

*Howes* was cited as well in disposing of Spurrier's attack on the sufficiency of the evidence; but it was the other

aspect of *Howes* that was relied upon. At p. 112, 182 A.2d 358: "[W]hen the facts are peculiarly within the knowledge of the defendant, as they were here, the burden is on him to prove that he comes within one or more of the exceptions."

At the time *Howes* was decided, there was a statute providing that an indictment would not be quashed, and a conviction based on it would not be overturned "for the want of the averment of any matter unnecessary to be proved." Md.Code Ann. 1912, art. 27, § 496. The *Howes* Court mentioned the statute, but dismissed it as merely begging the question. There were, of course, no Maryland Rules of Procedure at the time.

The first comprehensive set of Maryland Rules dealing with criminal procedure was adopted by the Court of Appeals in 1961, to take effect January 1, 1962. Included therein was a new rule on indictments (Rule 712), which was intended to supplant some of the statutory provisions dealing with that subject.[4] Section a of the Rule provided, in relevant part:

> "An indictment shall contain a plain, concise and definite statement of the essential facts constituting the specific offense with which the defendant is charged. It need not contain any other matter not necessary to such statement, *nor need it negative an exception, excuse or proviso contained in a statute creating or defining the offense charged.*" (Emphasis supplied.)

The emphasized portion of Rule 712 a can only be regarded as intending and effecting a clear departure from the caselaw that had developed up to that point; and, as the caselaw had been uniformly based on principles of common law pleading, rather than on any Constitutional right, we can see no impediment to the Court effecting the change by Rule. No longer, under the Rule, would an exception, of whatever kind or wherever placed in the statute, have to be

---

4. In 1963 (1963 Md.Laws, ch. 558), the General Assembly repealed the various statutes supplanted by the new Maryland Rules, including the successor to art. 27, § 496 (then art. 27, § 606).

negated in the indictment, whatever might be required in order to prove the offense at trial.[5] Rule 712 a survived the 1977 revision intact, and now appears as Rule 711 d.

With that background, we turn, finally, to where appellant started—*Mackall v. State,* 283 Md. 100, 387 A.2d 762.

*Mackall* involved an indictment virtually identical to the one now before us; it charged that the defendant unlawfully wore and carried concealed upon and about his person "a certain dangerous and deadly weapon, to wit: a knife, and did wear and carry said weapon openly with intent and purpose of injuring another person in an unlawful manner." Mackall did not challenge the sufficiency of the *indictment.* He did claim, however, that the penknife exception stated in § 36(a) was so incorporated with the definition of the offense as to be an essential element thereof, and that the State therefore had the burden of *proving* that the knife in question was not a penknife without switchblade.

The Court focused on the issue raised by Mackall—the sufficiency of *evidence.* Indeed, that was the only issue embodied in the petition for *certiorari.* After analyzing the statute and its legislative history, the Court concluded that *Spurrier* was distinguishable—that the exceptions stated in subsection (c) were of a different type than the penknife exception stated in subsection (a). Unlike the "person" exceptions in subsection (c), "the weapons exception in subsection (a), set out in the enacting clause defining the offense, is an essential ingredient of the offense." *Id.,* 111,

---

5. Unfortunately, the legislative history of Rule 712 is scant; it is barely mentioned in the Reports of the Court's Standing Committee on Rules (20th Report, Sept. 1960 and Sept. 1961). The only clue to its purpose that we could find was this statement by the Reporter to the Committee to the 1960 Judicial Conference:

"Indictments have grown through the years to be such cumbersome, unwieldy and unintelligible to the average person, things that the Committee felt some steps should be taken to reverse the trend and simplify the language, and the rule as adopted or as proposed is intended to do just that. A plain concise and definite statement of the essential facts constituting the specific offense with which the defendant is charged is the crux of that rule."

387 A.2d 762. For that reason, it was incumbent upon the State to prove that the knife carried by Mackall was not a penknife without switchblade; and, as the State failed to produce evidence in that regard, the conviction was reversed.

The most significant statement from *Mackall,* in terms of what is now before us, has unfortunately eluded the attention of both appellant and the State. In discussing *Spurrier,* the Court observed, at p. 110 of 283 Md., 387 A.2d 762 (footnote 10):

"This finding was with reference to the claim that the indictment was defective in that it did not negate the exceptions set forth in subsection (c). The sufficiency of the indictment in the case sub judice is not an issue. *In any event, see former Maryland Rule 712a, now Maryland Rule 711d, effective 1 July 1977."* (Emphasis supplied.)

The gratuitous nature of that statement—that reference to the rule—makes it particularly significant. Here, for the first time, the Court not only went out of its way to call attention to the rule, but it did so in a context that made clear its view that, when dealing with statutory exceptions, the sufficiency of the *allegata* and the sufficiency of the *probata* are not necessarily governed by the same rules. The Rule itself makes equally clear that, although a statutory exception may in some instances constitute a material element of the offense, unlike other material elements, it need not be negated in the indictment.

Although the wisdom of the Rule, and the distinctions necessarily arising from it, are not for us to judge, we find no problem with what the Court has done. The underlying common law and Constitutional right discussed in *Ayre* and the cases preceding it has been said to serve these purposes:

"(i) to put the accused on notice of what he is called upon to defend by characterizing and describing the crime and conduct; (ii) to protect the accused from a future prosecution for the same offense; (iii) to enable the defendant to prepare for his trial; (iv) to provide a basis for the court

to consider the legal sufficiency of the charging document; and (v) to inform the court of the specific crime charged so that, if required, sentence may be pronounced in accordance with the right of the case."

*Ayre*, 291 Md. at 163, 433 A.2d 1150. *See also State v. Nutwell*, 1 Gill 54 (1843); *State v. Lassotovitch*, 162 Md. 147, 159 A. 362 (1932).

We see nothing in Rule 711 d, especially as applied in this case, that contravenes or frustrates any of those purposes. Appellant knew precisely what he was called upon to defend; and defend it he did, arguing throughout that the knife in question was no more than a penknife. A future prosecution based upon his carrying that weapon clearly is not possible; appellant was in no way disabled from preparing for trial; as no challenge was made to the indictment, the fourth purpose was irrelevant; and we see nothing in the record to indicate that the omission in the indictment caused any problem in sentencing.

■ From this analysis, we conclude that the indictment against appellant was sufficient. It did not have to negate the exception; it did not have to specify that the knife was not a penknife without switchblade.

### (3) *Sufficiency of Evidence*

■ Appellant's attack on the sufficiency of the evidence is also based upon the nature of the knife. The weapon was introduced into evidence; a photograph of it is in the record before us. The jury could rationally conclude that it was not a penknife.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.

ARTHUR M. AHALT, Specially Assigned Judge, dissenting.

I concur with the majority opinion with regard to the issues of the challenge to the jury instructions and of the sufficiency of the evidence. However, I must respectfully

dissent from the majority ruling on the sufficiency of the indictment, as that ruling oversteps important constitutional considerations.

First, the majority correctly states the general rule applicable to the sufficiency of the indictments; an indictment must allege all "essential" or "material" elements of the offense; if such an element is omitted, the indictment fails to state the offense; *if an offense is not stated,* the indictment *is fatally defective.*

In *Ayre v. State,* 291 Md. 155, 433 A.2d 1150 (1981) Judge Digges for the Court of Appeals, made the following propositions abundantly clear:

A.   An indictment serves five (5) purposes:

(1) to put the accused on notice of what he is called upon to defend by *characterizing* and *describing* the crime and conduct

(2) to protect the accused from jeopardy from future prosecution

(3) to enable the Defendant to prepare his defenses

(4) to allow the Court to consider the legal sufficiency of the charges

(5) to allow the Court to identify the legality of the sentence

With regard to No. 1 the purpose is fulfilled if the indictment (a) characterizes the crime and (b) describes the crime.

With regard to (a) *characterizing* the crime, the indictment must contain all of the essential elements.   No particular form is necessary to accomplish this as long as all of the elements are stated in the document.

With regard to (b) *describing* the crime, the document must contain such additional information as is necessary to inform the accused of the particular conduct alleged to have been committed.

In the case at bar, the majority further holds that this indictment falls within a narrow exception to the general

rule: the State need not make reference to exceptions to a statutory crime in the charging document. To apply the exception in this case causes a result too sweeping in nature, and denies important constitutional protections.

Article 21 of the Maryland Declaration of Rights ensures "[t]hat in all criminal prosecutions, every man hath a right to be informed of the accusations against him; to have a copy of the indictment or charge in due time to prepare his defense." One purpose served by such a right is "to put the accused on notice of what he is called upon to defend by *characterizing* and *describing* the crime and conduct." *Ayre v. State, supra.* (Emphasis added).

This rule has been consistently applied to allow an individual accused of a crime to receive a charging document which, on its face, charges him with committing a crime. In *Ayre v. State, supra,* omitting the term "knowingly" from a charge was fatally defective, as knowledge was an essential element of the crime. Without an allegation of knowledge, the indictment did not, on its face, state a crime.

In the present instance, the Appellant was brought to trial for carrying a "dangerous and deadly weapon, to-wit: a knife..."[1] Such an allegation does not describe criminal conduct. It is not a violation of the law in the State of Maryland to carry a knife. Md.Code Ann. Art. 27, § 36(a); *Mackall v. State,* 283 Md. 100, 387 A.2d 762 (1978). The Legislature has only prohibited carrying certain types of knives, those they considered dangerous and deadly weapons. The language specifically excepts one type of knife, "penknives without switchblades" from the category of prohibited weapon. However, the words also describe another

---

[1]. First Count

On the 19th day of September, in the year of our Lord Nineteen hundred and eighty-one, in the City aforesaid, unlawfully did wear and carry concealed upon and about his person, a certain dangerous and deadly weapon, to-wit: a knife, contrary to the form and Act of Assembly in such case made and provided, and against the peace, government and dignity of the State. (Carrying concealed Weapon, Art. 27 § 36) (R–7–9)

prohibited knife, a penknife *with* a switchblade. Therefore, an essential element of the crime must be the particular description of the knife. The words in question are, therefore, necessary to completely describe and characterize the type of prohibited, dangerous and deadly weapon. Thus, the Court of Appeals in *Mackall v. State, supra,* required the state to prove that full description at trial. Therefore, unless the State alleges that the knife is not a penknife without a switchblade, the charge does not describe a crime. This is a clear defect of constitutional dimension. In *Ayre v. State, supra,* the Court of Appeals said:

"We espouse no novel doctrine in announcing that under the law of this State, in charging documents the elements to constitute the offense are to be averred. Article 21 of our Declaration of Rights imposes no requirement unduly burdensome, and parallels similar mandates existing by virtue of the constitutions of the federal government and many of our sister states. The failure to allege material elements of the offense is not a mechanical defect in the charge, and thus cannot be brushed off by the facile citation of cases which indicate that the modern trend of courts is to reject outworn legalistic formulas for criminal allegations. *We deal here not with hypertechnical rules of pleading which plague unwary prosecutors and free for- tuitous defendants, but rather a requirement imposed upon the State as a constitutional minimum.* As was stated by Chief Judge Marbury for this Court over thirty- five years ago:

'To the lay mind all of these things are technicalities which should not interfere with prosecution for a crime. This point of view is based upon an assumption, which may be true in many cases, that the party charged knows what he is charged with, and therefore he is not harmed if the crime is not very definitely defined. The purpose of requiring an indictment, however, and of requiring that indictment to set specifically the crime charged, is to protect the innocent man who may be wrongfully charged and who may know nothing whatsoever about the

crime.... [Indictments] are not intended to afford means by which a party, accused of crime, can escape trial because of inconsequential omissions, but the principle must be maintained that the substantial components of the crime must be set out with such particularity that the party accused knows what it is he is being charged with so that, if he is tried the recitals in the charge may be sufficient to protect him from a second trial for the same offense. An objection made on the ground that an indictment fails in these particulars is not a technical objection; it is one that goes to the very heart of the law, and it must be seriously dealt with.' " (citations omitted) (Emphasis added)

Despite this clear guidance, the majority would uphold an indictment which, on its face, does not describe criminal conduct. The majority supports that conclusion for three reasons.

First, the majority holds that the words needed in a charging document are matters of common law pleading, not constitutional law. In accord with this view, the Rules of Court could alter pleading requirements without raising constitutional questions. Specifically, the prevailing opinion upholds, as valid, Md.Rule 711(d), which provides in part, that:

" . . . A charging document need not negate an exception, excuse or proviso contained in a statute or other authority creating or defining the offense charged."

The Court's distinction between common law pleading requirements and constitutional pleading requirements begs the question. The Maryland Courts have explicitly recognized that Article 21 of the Maryland Declaration of Rights "embodies the ancient pleading rules of the common law." *Ayre v. State, supra.* Since this is true, any tampering with common law pleading requirements must necessarily call into play constitutional consideration. This principle is illustrated by cases which uphold rigidly the pleading requirements of the common law. *Ayre v. State, supra, State v.*

*Dycer,* 85 Md. 246, 36 A. 763 (1897). In *Dycer,* the Court reiterated that an indictment is invalid unless it concludes with the words "against the peace, government and dignity of the State." See also Md.Rule 711(b). Thus, constitutional requirements for a sufficient indictment far exceed mere considerations of "notice." It is required at the least, that all the essential elements of a crime must be stated in the charging document.

Any rule which purports to eliminate such a mandatory requirement must be carefully scrutinized. If it is applied in a manner inconsistent with the Maryland Constitution, the rule is clearly invalid. *Heslop v. State,* 202 Md. 123, 95 A.2d 880 (1953). Any attempt to avoid considering constitutional issues because of the provisions of a rule is accordingly unacceptable. Where common law pleading requirements have been set aside by rule, constitutional rights are affected.

The second reason the majority states to uphold the indictment is likewise misplaced. The Court concludes that the State need not refer to an exception to a statutory criminal offense when the Defendant has actual knowledge of the charges against him. This is labeled the "subjective test" of an indictment. In effect, the Court looks to whether the Defendant was aware of the offense of which he is charged. This approach lies directly in the face of the traditional tests of a charging document. As recounted in *Ayre v. State, supra,* indictments are to be reviewed by using an "objective test."

To support this "subjective test" approach, the Court relies on *Howes v. State,* 141 Md. 532, 119 A. 297 (1922) and *Spurrier v. State,* 229 Md. 110, 182 A.2d 358 (1962). These cases do uphold convictions in which an indictment did not negate exceptions to a statutory offense. However, in each case, the Defendant was held criminally responsible "because the facts are pecularily within the knowledge of the defendant." *Spurrier v. State,* 229 Md. at 176, 182 A.2d 358. See also, *Howes v. State,* 141 Md. at 543, 119 A. 297.

The "peculiar personal knowledge" proviso was present in both cases. *Howes* involved a conviction for illegally selling liquor. The statute defining the crime added certain classes of persons who could engage in the activity, including those under order of court to make such a sale, and sales of cider for consumption off the premises. *Howes* would certainly have access to his authority for the sale, or the types of sales made, while the State would not. *Spurrier* was charged with carrying a dangerous and deadly weapon under Art. 27 § 36(a). That statute lists certain persons, such as policemen, who may lawfully carry such weapons. *Spurrier* would certainly have "peculiar knowledge" as to whether he was a police officer or other exempt persons while the State would not.

Both *Howes* and *Spurrier* dealt with a narrow exception to general common law pleading rules. The effect of *Ayre v. State, supra,* on this exception has not yet been determined. However, even assuming, arguendo, that the "subjective test" is constitutionally permissible in this narrow context, the case at Bar does not call for the application of that test. The present dispute concerns the type of a knife. The State had possession of the knife at the time of trial. Appellant was not privy to any "peculiar personal knowledge" about that knife. Therefore, the "subjective test" does not apply. Rather, the general rule governing indictments should control here, namely, an "objective test."

Applying an "objective test" to the indictment at issue, leads to the inevitable conclusion that the words employed by the State as to the "knife" do not describe any known criminal conduct. As such, the indictment is Constitutionally deficient.

Finally, the majority maintains that the Court of Appeals has impliedly approved of indictments which do not negate exceptions. This assertion is based on a footnote in *Mackall v. State, supra,* where the sufficiency of the indictment was not at issue. The *Mackall* court's reference was as follows:

"The sufficiency of the indictment in the case sub judice is not an issue. In any event, see former Maryland Rule 712 a, now Maryland Rule 711 d, effective 1 July 1977." 283 Md. at 110, 387 A.2d 762 (footnote 10)

Within this reference the Court does not directly discuss the efficacy of Rule 711 d. The statement is a gratuitous one, and as such hardly compelling authority for the holding of the majority, especially since that decision pre-dated *Ayre v. State, supra.*

In conclusion, I dissent because the indictment in this case does not meet the Constitutional minimum of Article 21 of the Maryland Declaration of Rights. Accordingly, I would reverse the appellant's conviction of carrying a concealed dangerous and deadly weapon in indictment no. 18129303.